## Linscott & al., in equity, versus Buck & al.

Courts of Equity look to the *substance* rather than to the *forms* of a contract, and aim to discover and execute the *intentions* of the parties.

In equity, contracts for the sale of land are not considered merely as executory, but are treated as if executed. The purchaser is regarded as owning the land, and the vendor as owning the purchase money, and as seized of the land, in trust for the purchaser.

Such a trust attaches to the land, and binds every one claiming through the vendor, *with notice.*

Neglect to pay at a stipulated pay-day will not, of itself, produce a forfeiture, if the creditor has not considered the time as of the essence of the contract.

The receiving of a payment, after the pay-day had expired, is a waiver up to that time, of any forfeiture incurred by the mere delay of payment.

*D. Goodenow* and *Appleton,* for the plaintiffs.

*Kimball,* for the defendants.

Howard, J. — The defendant Buck contracted, by bond dated October 27, 1845, to convey to the plaintiffs, "by a good and sufficient deed," the land described in the bill, on payment of a certain sum. One third of the amount was

payable then, one third on the first day of June following, and the remaining third in six months from the day last mentioned. The bond was under seal and the penal sum was double the amount of the purchase money. For the last two payments, the plaintiffs gave their joint notes on interest. They made the first and second payments when due, with the exception of interest on the second; but the note last payable, and the interest on both notes, remained wholly unpaid until March 23, 1850. Then they paid the interest due on both notes, and received a writing signed by Buck, referring to the bond, and stating that, " although the conditions are broken, and I am absolved from any obligation, I shall take no advantage of that, if the remainder due is speedily paid, but give a deed according to the conditions of said bond, and which title I think must be unquestionable."

On April 19, 1850, one Lewis, in behalf of the plaintiffs, paid two fifths of the unpaid note to Buck, and he indorsed the payment upon the note and still retains it. On the 7th of September following, Buck conveyed the premises to James Leavitt, one of the other defendants, for a consideration exceeding twice the amount due on the note of the plaintiffs, without notice to them, and without any demand on them for the payment of the balance due on their note, and without any knowledge, on their part, that such conveyance was contemplated.

About November 10, 1850, the plaintiffs tendered to Buck the balance due upon their note, which he declined to accept. Failing to obtain a deed, they instituted this suit, on March 8, 1851, to compel a specific performance of the contract, averring readiness to pay and perform.

These facts are substantially alleged in the bill, admitted in the answers, and supported by proof.

By the contract of March 23, 1850, Buck waived all prior right to insist upon a forfeiture by the plaintiffs, and they were relieved from the effect of a want of strict compliance, to that date. No advantage was to be taken, no forfeiture claimed, " if the remainder due is speedily paid." If Buck

had intended, that payment should be made within a definite time, he could then have fixed that time ; and if he designed to insist upon a strict compliance, at a particular date, he should have so expressed it in the writing then given; or, at least, should have informed the plaintiffs, before conveying to another, with what *speed* they should proceed in order to secure the benefits of the contract, according to his construction of the instrument he had given to extend the time of payment. The evidence of conversations between the parties at the time of executing it, were not admissible to control the plain, unambiguous language of that instrument.

By receiving a payment on April 19, 1850, of a part of the amount due, and indorsing it upon the note, Buck abandoned all supposed intention of insisting upon a forfeiture at that date, and gave further time, in effect, for payment of the remainder. There is evidence, that when Lewis made this payment for the plaintiffs, and appeared to be acting for them, he sent a message to Buck, that "Linscott, (one of the plaintiffs) intended to pay the rest of the money soon, and that he need not be any ways afraid; if Mr. Linscott did not pay the money, he would see that he had it himself, and that he wished Dr. Buck not to give any deed until he saw him, or let him, Dr. Lewis, know it." To this message the witness could not state the reply of Buck distinctly, but thinks he said that he would see Lewis, or let him know before he gave a deed. It is evident, however, that he did not then insist on immediate payment, and that time was not then treated as of the essence of the contract. He does not pretend, in his answer, that time was essential, or that he gave any notice, or intimation, that he should claim prompt payment or a forfeiture.

While Buck, in his answer, admits a tender, in November, 1850, of the amount due, he states, as an objection, that the plaintiffs did not tender any thing for making and executing a deed; and that they did not demand a deed at that time. But it appears in proof that the plaintiffs, in October, 1850, made a tender of paper money, and demanded a deed; but

that tender being objected to as insufficient, the tender in November was made in legal coin, as admitted. The object of both tenders could not have been misunderstood; it was to obtain a deed of the land. And if any tender was necessary, under the circumstances, which is not assumed or admitted, none would seem to have been required for making and executing a deed from the vendor, under the contract.

It cannot impair the rights of the plaintiffs, that they may have been apprehensive that the vendor could not be compelled to convey to them, or that they imputed no blame to him. Nor is it material to this case, to inquire into the value of the property, or the amount received from it, by the plaintiffs, for timber sold, or for profits.

Buck, in his answer, states his belief, (founded on an uncertain message, from an unknown source, and on the statements of "credible witnesses" whose names he does not give,) "that the plaintiffs could not make out the remainder of the money, in payment of the second note, and therefore did not expect to have the land."

This statement in the answer is not responsive to the bill, and is not evidence. But if it had been responsive, it could not aid the defence. The belief of a party may affect his conduct and satisfy his conscience, but it cannot justify an invasion of the rights of others. The credulity of the defendant cannot excuse a violation of his contract with the plaintiffs. He cannot successfully assume in defence, that time was material to the contract, when the evidence and his answer, show that it was not essential; and not so regarded by him when he made the conveyance.

James Leavitt was a purchaser with notice of the rights and claims of the plaintiffs to the land. He then conveyed it to his sister, Sarah Ann Leavitt, the other defendant, who purchased with like notice. Both of these grantees, if they now claimed title, would hold subject to the equities between Buck and the plaintiffs. But the evidence discloses the further fact that, since the filing of the bill, Sarah Ann Leavitt has recon-

veyed the land to Buck, though upon what terms or consideration, does not appear.

Courts of equity look to the substance more than to the forms of agreements, and aim to discover and execute the intentions of the parties. In law, contracts for the sale of land are considered as executory agreements, not attaching to the land, and for the violation of which, damages, only, are recoverable. But in equity such contracts are treated as if they had been executed. The purchaser is regarded as owner of the land, and the vendor as owner of the purchase money, and as seized in trust for the purchaser. The trust attaches to the land so as to bind every one claiming through the vendor with notice.

We do not perceive that Buck suffered any loss, or inconvenience not contemplated, prior to his conveyance to Leavitt; if any has arisen since, it cannot be attributed to the plaintiffs. Having received from the plaintiffs four fifths of the purchase money, and being now owner of the land, he is in a position to fulfil his contract, upon payment to him of the amount remaining due under it; and having failed to offer any substantial reason for not fulfilling it, a decree for specific performance will be entered, in accordance with the prayer of the plaintiffs.

As the estate is now in Buck, neither James Leavitt, nor Sarah Leavitt, can have any ground on which to contest a decree for specific performance. Having purchased with notice, and under circumstances indicating a design to take advantage of the necessities of the plaintiffs, and to acquire the property on favorable terms, regardless of their rights, they will both be enjoined against claiming the land through their conveyances from the other defendant.

*Each of the three defendants is chargeable with costs.*