ROSCOE F. CROSS and others, in equity

*vs.*

ALPHEUS S. BEAN and RUFUS G. A. FREEMAN.

Oxford.    Opinion September 16, 1890.

*Equity.    Vendor and Purchaser.    Specific Performance.*

When the owner of a lot of land agrees to sell it for an agreed price to another who agrees to pay it, equity treats the vendee as the equitable owner and the vendor as holding the legal title in trust for him; which trust follows

the land until it reaches some *bona fide* purchaser for valuable consideration without notice of the original vendee's equitable title.

(See *Cross* v. *Bean*, 81 Maine, 525.)

IN EQUITY.

On appeal, by defendant Bean, from a decree in favor of complainants after hearing on bill amended, answers and proofs.

The complainants amended their bill after the opinion of this court, announced May 20, 1889, by the following allegations :

"That said deed from Freeman to Bean, dated November 6th, 1886, was either given with the intention to convey said lot No. 4, and, so as aforesaid, by mistake of the parties thereto, described said lot No. 5, known as the "Cross Lot," instead thereof,—or said Bean well knowing that said Freeman intended to convey to Cross and Gerrish, and that Cross and Gerrish intended to receive under said deed to them, said lot No. 5, known as the 'Cross Lot,' and of which they took possession under said deed, having ascertained the mistake in said deed to Cross and Gerrish,— procured the said deed from Freeman of said Lot. No. 5, known as the 'Cross Lot,' to himself in fraud of the rights of the plaintiffs, knowing of the mistake aforesaid, of the claim of the plaintiffs to the lot so occupied by them and of their possession thereof claiming under their said deed.

"Whereupon the plaintiffs charge and say that in either case said Bean is not a *bona fide* holder for a valuable consideration of said lot No. 5, known as the 'Cross Lot,' and occupied by the complainants and is not entitled in equity to hold the same against the plaintiffs."

The defendant, Freeman, withdrew his appeal March 21, 1890.

*R. A. Frye*, for defendant Bean.

Action to reform a deed is in the nature of an action for specific performance. Wat. Sp. Per. § § 360, 371 ; *Petesch* v. *Hambach*, 48 Wis. 447. The mistake must not be the fault of the party complaining. Wat. Sp. Per. § 358. The complainants cannot misrepresent facts, or make false statements to induce the defendant to purchase. Wat. Sp. Per. § § 304, 305 ; *Doggett* v. *Emerson*, 3 Story, 773 ; *Tyson* v. *Passmore*, 2

Pa. St 122; *Graves* v. *Bank*, 10 Bush. (Ky.) 23; *Sims* v. *Ferrill*, 45 Ga. 585. A party seeking equity must do equity, and it must not be owing to a want of reasonable diligence. Relief is granted only to the vigilant, and not where the mistake is imputable to the party's own improvidence and inattention. Wat. Sp. Per. § 358; *Quirk* v. *Thomas*, 6 Mich. 77; *Railroad* v. *Babcock*, 6 Met. 352; *Rogers* v. *Saunders*, 16 Maine, 92; *Low* v. *Treadwell*, 12 Maine, 441. The complainants must prove notice; they have charged it on Bean. He paid a valuable consideration, therefore considered an innocent purchaser of a title perfect on its face. *Jewett* v. *Palmer*, 7 Johns. 65. When both parties are innocent and their opportunities were equal, or even if that fact is doubtful, and the parties have acted with good faith courts of equity do not interpose. *McCobb* v. *Richardson*, 24 Maine, 82; *Bigley* v. *Jones*, (Pa.) 5 Cent. 674.

When a party seeking equity has made false statements and misrepresented to the defendant the facts, but not intentionally, ignorance is no excuse or apology. *Lumbert* v. *Hill*, 41 Maine, 483; *Covell* v. *Bank*, 1 Paige, 131; *McFerran* v. *Taylor*, 3 Cranch, 580; *Morss* v. *Elmendorf*, 11 Paige, 277; *Smith* v. *Richards*, 13 Pet. 26; *Whitman* v. *Weston*, 30 Maine, 288; *Bean* v. *Herrick*, 12 Id. 266.

The general rule is, when one of two innocent persons must suffer by the wrongful act of a third party, the one who by his negligence has enabled such third party to do the injury must bear the loss. *Hartell* v. *Bogart*, 9 Paige, 52; *Durkee* v. *Durkee*, N. E. R. Vol. 4, 134, (Vt.)

*A. E. Herrick*, for plaintiffs.

VIRGIN, J. Bill in equity to reform a deed describing land in Fryeburg Academy Grant as "lot No. 6 in range 5 according to the plan of said Grant," instead of "lot No. 5 in range 6."

The case is before us on appeal by the defendant Bean, from the decree of the justice who heard it on bill, answer and proof. The findings of the facts by the presiding justice must stand, unless they are clearly shown to be erroneous. *Young* v. *Witham*, 75 Maine, 536; *Paul* v. *Frye*, 80 Maine, 26; *Gilpatrick* v.

*Glidden*, 81 Maine, 137. A careful examination of the reported evidence satisfies us that the facts as found and reported in the opinion filed in the case are fully established.

Viewed from a legal standpoint, a simple agreement by the owner to sell and convey a certain lot of land to another for. an agreed price, is wholly executory. Until executed, the vendee acquires no legal interest in the land. The legal title remains in the vendor who may convey it to any person other than the vendee against the latter's protestations.

But equity, regarding what ought to be done as done (*Gardiner* v. *Gerrish*, 23 Maine, 46, 51; *Hubbard* v. *Johnson*, 77 Maine, 139; *Ricker* v. *Moore*, 77 Maine, 292,) considers the agreement, so far as the interest in the land is concerned, as executed; and treats the vendee as the equitable owner of the land, and the vendor as owning the consideration. The consideration draws to it the equitable right of property in the land, and he who pays it becomes the true beneficial owner and a trust is thereby created in his favor. And while the contractor or vendor still holds the legal title, he holds it as the trustee for the vendee. And this naked trust, impressed upon the land, follows it into whosever hands it may go by subsequent conveyances, until it reaches some holder who is a *bona fide* purchaser thereof for a valuable consideration without notice of the original vendee's equitable title; and then it becomes relieved of the trust. *Gilpatrick* v. *Glidden*, 81 Maine, 137, 151; 1 Pom. Eq. § 368; 1 Spence Eq. Jur. 451, 452 and 3.

As between Cross and Gerrish, (now represented by the plaintiffs) and the defendant Freeman, there is no doubt that the lot bargained and paid for was the one thereafter universally known as the "Cross lot." The purchasers forthwith entered upon it before the deed was delivered, and thereafter, for several years, continued to cut the black growth. All knew the lot's distinguishing characteristics and its location upon the face of the earth; but, as it seems, none knew its number as designated on the plan of the Grant. And the result, as might be expected, was that, when the deed was made, it described another lot, one

which the purchasers did not think of buying or the seller (through his local agent) of selling. The deed was received and consideration paid, the parties believing that it described the land bargained and paid for, and having no reason to suspect otherwise.

Applying the foregoing rules of equity, the equitable title passed to Cross and Gerrish, although the legal title remained in Freeman. But he held the legal title in trust for his vendees. And inasmuch as the mistake was mutual and established beyond fair and reasonable controversy (*Andrews* v. *Andrews* 81 Maine, 337, 341), equity would reform the deed, so as to correctly speak the actual intention of both parties thereto and thus perpetuate their actual and undisputed agreement, if the parties to the deed were the only persons interested in the land. *Andrews* v. *Andrews, supra*.

But as Freeman and Cross and Gerrish supposed, although erroneously, that the deed did accurately describe the land bargained for in 1873, Freeman subsequently conveyed the real lot to the other defendant Bean, who now claims to hold it upon the alleged ground that he is a *bona fide* grantee for a valuable consideration paid without notice of the equitable interest of Cross and Gerrish. And if his allegation is true, equity will withhold its hand from him. *Whitman* v. *Weston*, 30 Maine, 485; *Knight* v. *Dyer*, 57 Maine, 174.

But Bean never actually bought or intended to buy the "Cross lot." On the contrary after making himself entirely familiar with the lot, its location and growth by personal examination of it, and declaring that "he knew all about it and did not wish to see the deed," he purchased of Cross and Gerrish, the birch stumpage on it at fifty cents per cord, and paid twenty dollars in advance. And after operating some time under such purchase and making roads and building camps thereon, he concluded to purchase the lot next above the "Cross lot," bargained therefor with Freeman's agent for twenty-five dollars and afterward received a deed which he and Freeman's agent supposed and believed conveyed the lot bargained for and lying next above the "Cross lot." But, to

complete the comedy of errors, it turned out, upon a subsequent survey, that his deed from Freeman described the "Cross lot" itself instead of the one next above it; and that the deed from Freeman to Cross and Gerrish described "lot 6 in range 5" instead of "lot 5 in range 6"—the "Cross lot." Thereupon when Cross and Gerrish sought from Bean the equity of his releasing to them the legal title of the "Cross lot," which he knew that they in fact had bought and that he had not, and offered to do equity by paying to him the twenty-five dollars he had paid for it and also for his trouble he absolutely declined; declaring that it was his good luck and he should hold it; and satisfied his conscientious scruples,— if he had any,—by telling them—"they would do so if they had the chance." The transaction shows that he was not a *bona fide* but a *mala fide* grantee.

If Bean had incidentally heard that Cross and Gerrish had bought the lot in controversy, and, upon examining their deed or its registry, ascertained that they had only bought another lot, and therefore thinking that his original information was erroneous, purchased it himself, then his *fides* might be different; but such is not this case. For he never saw their deed, and it never was recorded. He had personal knowledge that they had in fact purchased the lot in controversy; and he availed himself of that knowledge by purchasing the stumpage on it and making what he declared to be a good trade. If he had been as proficient in the efficient rules of equity as he seems to have been in the vigorous rules of law, he would not have yielded to the temptation of attempting to reap the benefits of a contract which he never made.

Our opinion, therefore, is that the decree below shall be affirmed in its result as follows : Bean, at his own expense, within thirty days after the announcement of this opinion, to release his title to lot 5, range 6 to the plaintiffs, such release to have the full effect to preserve to the plaintiffs all rights as though no mistake had been made in the deed of February 20, 1873, from Freeman to Cross and Gerrish and no conveyance thereof had been made by Freeman to Bean. The plaintiffs, within the same time, at their own expense, to release all interest in lot 6,

range 5 to Freeman. Freeman within the same time to refund to Bean the twenty-five dollars paid by the latter to the former for lot 5, range 6,—less the expense of said deed.

Freeman to neither recover nor pay costs in this suit. Plaintiffs to recover costs from Bean.

*Decree accordingly.*

PETERS, C. J., WALTON, LIBBEY, HASKELL and WHITEHOUSE, JJ., concurred.