LOWELL E. BAILEY, in Equity, *vs.* GROVER K. COFFIN, et als.

Washington.    Opinion December 22, 1916.

*Deeds impressed with a trust.    Equitable proceedings to compel conveyance,*
*where party making agreement to convey has sold or conveyed his*
*rights and interest.    Rule of law where grantee had no notice*
*of any agreement.    Burden of proof where appeal is*
*entered from the finding of fact of a single Justice*
*sitting in Equity.    What will constitute*
*"Notice of a deed impressed with a trust."*

Process to determine equitable rights in real estate. In the court below the bill was dismissed as to all defendants, except John G. Ray. A decree was made ordering him to execute and deliver to the plaintiff a quit claim deed of the premises, conditional upon the plaintiff's payment to Ray of one hundred twenty-six dollars and forty-two cents, less plaintiff's costs. Exceptions to and appeal from this decree were taken by Ray.

The plaintiff introduced a written memorandum of the following tenor: "This certifies that Benjamin & Jacob Bailey is entitled to a contract from the trustees of the Bingham Estate, for lots No. 73, 74, 128 and Pt. Lots No. 62, containing 360 acres more or less, the purchase money being $250., payable $50. down and $50. yearly until paid, with interest.

"Baring, Nov. 17, 1873.    A. B. Getchell."

He also introduced quit claim deeds, unrecorded, from the Baileys through a brief line of conveyances to himself.

The memorandum was recorded in the proper registry of deeds on January 17, 1903.

The defendant introduced a recorded quit claim deed from the Bingham estate to one Coffin and a like instrument, recorded, from Coffin to himself. The deed to Coffin was dated prior to the record of the memorandum introduced by the plaintiff, but the oral testimony showed that Coffin knew before he took his deed that the land had been bargained to the Baileys. The deed from Coffin to the defendant was dated subsequent to the record of plaintiff's memorandum.

While in a court of law an agreement to sell and convey land is wholly executory, and until executed the vendee acquires no interest in the land, and the legal title remains in the vendor who may convey it to any other person than the vendee, despite the protest of the latter, yet equity regards what ought to be done as done, and hence in an agreement for the sale of land, so far as the interest in the land is concerned, the agreement is con-

sidered as executed by the equity court, which treats the vendee as the equitable owner of the land and the vendor as owning the consideration, which consideration draws to it the equitable right of property in the land, and he who pays for it becomes the true beneficial owner, and a trust is thereby created in his favor. And while the contractor or vendor still holds the legal title, he holds it as the trustee for the vendee. And this naked trust, impressed upon the land, follows it into whosoever hands it may go by subsequent conveyances, until it reaches some holder who is a bona fide purchaser thereof for a valuable consideration without notice of the original vendee's title, and then it becomes relieved of the trust.

The purchase price to the Baileys was $250. on which $210 had been paid.

*Held;*

1. That Coffin was not a purchaser without notice, because of the oral testimony in the case.

2. That the defendant was not a purchaser without notice by virtue of R. S. chap. 75, sec. 15, which declares "The title of a purchaser for a valuable consideration . . . cannot be defeated by a trust, however declared or implied by law, unless the purchaser . . . had notice thereof. When the instrument, creating or declaring it, is recorded in the registry where the land lies, that is to be regarded as such notice."

3. That the plaintiff's memorandum, recorded before defendants' deed was obtained was an instrument creating the trust above referred to and its record is to be regarded as notice.

4. That the naked trust imposed upon the land by the memorandum followed the land into the hands of Coffin.

5. The contentions of the defendant as to form of the agreement, authority of Getchell to sign the same, occupancy of the premises, laches of plaintiff, in not paying balance of purchase price and obtaining deed, and staleness of plaintiff's claim were questions presented and combatted in the realm of fact and determined as such by the sitting Justice. "The findings of a single Justice, in equity procedure, upon questions of fact necessarily involved, are not to be reversed upon appeal unless clearly wrong, and the burden is upon the appellant to satisfy the court that such is the fact, otherwise the decree appealed from must be affirmed." *Haggett v. Jones,* 111 Maine, 348.

Bill in equity asking that defendant, Ray, be ordered and decreed to give to complainant a conveyance of certain real estate and that the other defendants, Edward Chase and Clifford Chase, be ordered to render an accounting of the timber, wood and growth cut on said land in dispute and taken by them. The defendant Ray filed a demurrer to the bill, which was overruled by the Justice presid-

ing, and also filed answer. After hearing, the Justice presiding filed a decree ordering that defendant, Ray, make said conveyance prayed for, and dismissed bill as to the other defendants, without costs. To this finding of the single Justice, defendant Ray filed exceptions, and entered his appeal to Law Court. Exceptions overruled. Appeal denied. Decree below affirmed.

Case stated in opinion.

*Ashley St. Clair, H. H. Gray, and J. H. Gray,* for plaintiffs.

*John P. Deering, and A. D. McFaul,* for defendants.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHILBROOK, MADIGAN, JJ.

BIRD, HALEY and MADIGAN do not concur.

PHILBROOK, J. This is a proceeding brought to ascertain and determine the equitable rights of the parties in certain real estate. The plaintiff offered a written memorandum of the following tenor:

"This certifies that Benjamin & Jacob Bailey is entitled to a contract from the Trustees of the Bingham Estate, for lots No. 73, 74, 128 and Pt. Lots No. 62 containing 360 acres more or less, the purchase money being $250, payable $50 down and $50 yearly until paid with interest.

"Baring, Nov. 17, 1873.                    A. B. GETCHELL."

The above was recorded January 17, 1903, in the Registry of Deeds for the county in which the land was situated. He also offered conveyances as follows:

Jan. 30, 1903  Quit claim deed of interest in these lots, from Jacob Bailey to Benjamin Bailey, apparently not recorded.

May 22, 1906  Quit claim deed of interest in same lots, from Benjamin Bailey to Joseph F. Preston, apparently not recorded.

Feb. 24, 1909  Quit claim deed of interest in same lots from Joseph F. Preston to Lowell E. Bailey, the plaintiff, apparently not recorded.

There were also offered the following conveyances:

Jan. 8, 1901    Quit claim deed of interest in same lots (with other real estate) from the Trustees of the Bingham Estate to Joseph A. Coffin; recorded January 25, 1901.

Sept. 23, 1903    Quit claim deed of interest in same lots, from Joseph A. Coffin to Joseph G. Ray, the defendant, duly recorded.

Thus it will be seen that, while the defendant claims the land by virtue of the two recorded quit claim deeds last referred to, the plaintiff claims rights in the land which, as he says, a court in equity should recognize and enforce because of the documentary and other evidence which he offers.

The bill was dismissed below as to all defendants except John G. Ray. A decree was made ordering him to execute and deliver to the plaintiff a quit claim deed of the premises, conditional upon the plaintiff's payment to Ray of one hundred twenty-six dollars and forty-two cents, less plaintiff's costs. Exceptions to and appeal from this decree were taken by Ray.

The latter, together with his answer, had seasonably filed a demurrer which was overruled, and to this ruling also exceptions were seasonably taken and allowed.

Since the demurrer, by its terms, challenges the jurisdiction of the equity court as to this cause, we must first determine that question. It should be observed that this is not a proceeding between the original parties to a contract for a conveyance of real estate, in which plaintiff seeks a decree for specific performance, but one in which the plaintiff claims to have succeeded to the rights of the contractee for a conveyance, while the defendant is claiming by deeds from the contractor subsequent to the date of the agreement on which the plaintiff relies. If the controversy at bar were to be determined in a court of law, we should not overlook the fact that in such a forum an agreement to sell and convey land is wholly executory, that until executed the vendee acquires no interest in the land, and that the legal title remains in the vendor who may convey it to any other person than the vendee despite the protest of the latter. But we are in the court of the chancellor where equity regards what ought to be done as done, and hence in an agreement for the sale

of land, so far as the interest in the land is concerned, the agreement is considered as executed by the equity court, which treats the vendee as the equitable owner of the land and the vendor as owning the consideration. "The consideration draws to it the equitable right of property in the land, and he who pays for it becomes the true beneficial owner, and a trust is thereby created in his favor. And while the contractor or vendor still holds the legal title, he holds it as the trustee for the vendee. And this naked trust, impressed upon the land, follows it into whosoever hands it may go by subsequent conveyances, until it reaches some holder who is a bona fide purchaser thereof for a valuable consideration without notice of the original vendee's title, and then it becomes relieved of the trust." *Cross* v. *Bean et al.,* 83 Maine, 61.

The defendant admits that some money was paid by the Baileys at the date of the written memorandum, and some in 1882. The plaintiff claims, and we think the evidence fairly shows, payments of $50 at the date of the writing, $50 May 29, 1880, $50 May 27, 1881, $50 July 7, 1882, and that a further credit of $10 without definite date is shown on the book kept by one Getchell for the Bingham estate, making a total payment of $210 on the purchase price. Thus it would appear, while all the purchase price was not paid, that it was sufficiently paid to bring the transaction within the above rule, thereby creating such a trust as may be properly considered by and give jurisdiction to the equity court.

Such being true, let us first examine the documentary evidence already referred to. When Joseph A. Coffin, the grantor of this defendant, took his deed from the Bingham estate on January 8, 1901, the agreement signed by A. B. Getchell had not been recorded. It is not necessary for the purposes of this case up to this stage of our discussion to decide whether that agreement was or was not a paper which could be admitted to record in the registry of deeds, nor whether such record, if the paper were improperly admitted to record, would give constructive or actual notice to Coffin of any claim to the land under it, for as we have seen the agreement was not recorded until more than two years after the date of the Coffin deed. But in the latter deed we find the conveyance qualified by the following, "subject to contract rights, if any, with John Robb

for lots Nos. 73 and 74," also "subject however to all outstanding contract rights, if any, as mentioned herein or unmentioned." We also find in the testimony of Gorham P. Flood that before Coffin bought the lands in question the witness told him that they had been sold to the Baileys. From all the testimony in the case the Chancellor found necessarily that the conveyance to Coffin was not without notice and hence under the rule in *Cross* v. *Bean,* supra, the naked trust imposed upon the land by the agreement followed the land into the hands of Coffin.

Now let us consider the conveyance from Coffin to Ray, dated September 23, 1903. In that was found the qualification, "subject to contract rights, if any, with John Robb for lots No. 73 and 74." Except this, the record is barren of any testimony to show that Ray had any notice of the agreement with the Baileys or of any rights of those claiming under them unless such notice is found from the agreement recorded January 17, 1903. We find no authority for recording such an agreement as in the case at bar unless by inference from R. S., chap. 75, sec. 15, which declares "The title of a purchaser for a valuable consideration . . . cannot be defeated by a trust, however declared or implied by law, unless the purchaser . . . had notice thereof. When the instrument, creating or declaring it, is recorded in the registry where the land lies, that is to be regarded as such notice." Did the Legislature intend that the statute just quoted should cover a situation like the instant case? The statute language is broad. We have just seen, in *Cross* v. *Bean,* supra, that an agreement for the sale of lands imposes a naked trust upon the land in favor of the vendee and it would appear to be a fair proposition of law that the written agreement for the sale of land is the "instrument creating or declaring" the trust. If so, and we so hold, then the instrument was properly admitted to record and this record, eight months before the deed from Coffin to the defendant, was, by statute, notice to the defendant of the existing trust. The defendant therefore was not a purchaser without notice, and as in the case of his predecessor the naked trust imposed upon the land by the agreement followed the land into the hands of Ray.

We have not overlooked the contentions of the defendant as to form of the agreement, authority of Getchell to sign the same,

occupancy of the premises, laches of plaintiff in not paying balance of purchase price and obtaining deed and staleness of plaintiff's claim, but these to our minds were questions presented and combatted in the realm of fact and determined as such by the sitting Justice. "The findings of a single Justice, in equity procedure, upon questions of fact necessarily involved, are not to be reversed upon appeal unless clearly wrong, and the burden is upon the appellant to satisfy the court that such is the fact, otherwise the decree appealed from must be affirmed." *Haggett* v. *Jones,* 111 Maine, 348.

*Exceptions overruled.*

*Appeal denied.*

*Decree below affirmed.*

BIRD, HALEY and MADIGAN, JJ., do not concur.