In re Mitchell E. KANE and
Alice C. Kane, Debtors.

Mitchell E. Kane and Alice
C. Kane, Appellants,

v.

Inhabitants of the Town of
Harpswell, Appellee.

BAP No. EP 99–082.

United States Bankruptcy Appellate Panel
of the First Circuit.

May 10, 2000.

to appellee (the "Town") to prosecute its forcible entry and detainer action against appellants (the "Kanes") to obtain possession of land upon which the Kanes reside, and denying the Kanes' motion to alter or amend the order, for a new trial, and for reimposition of the automatic stay. The appeal presents two principal issues: (1) what property rights do the Kanes have as purchasers under an installment sales contract where they failed to assume the contract in a prior Chapter 7 case; and (2) was the Town's issuance of a foreclosure notice violative of the automatic stay and therefore void? For the reasons stated below, we reverse and remand for further proceedings.

## I. Factual Background and Travel of the Case

The present controversy has roots almost a decade old. The operative facts are uncontroverted. Francis J. Pagurko ("Pagurko") was the owner of property in Harpswell, Maine. On March 6, 1991, he entered into an installment sales contract (the "Contract") with the Kanes, whereby he agreed to sell a particular portion of his real property (the "Property") to the Kanes for $15,000. Title was to pass to the Kanes when the purchase price had been paid in full and an existing mortgage satisfied, or on August 1, 1994, whichever was later.[1] In addition to the monthly contract payments, the Kanes agreed to pay real estate taxes and special assessments after they obtained possession. The Contract further provided that "risk of loss or risk of liability or damage to third parties shall be the responsibility of the Purchasers." The Kanes purchased a mobile home, placed it on the Property, and it became their residence.

Events did not proceed as contemplated by the Contract. In 1995, the Town sued Pagurko and the Kanes because the Property did not have an adequate waste dis-

Ralph W. Brown, Portland, ME, on brief for Appellants.

F. Bruce Sleeper, Sally J. Daggett, Jensen, Baird, Gardner & Henry, Portland, ME, on brief for Appellee.

Before KENNER, HILLMAN and FEENEY, U.S. Bankruptcy Judges.

HILLMAN, Bankruptcy Judge.

This is an appeal from orders of the bankruptcy court granting relief from stay

---

1. Pagurko was to pay the mortgage with the monthly payments he received from the Kanes.

218

posal system and supply of potable running water. The defendants sued Omer J. Alexander as a third-party defendant because of his claim of an easement over the Property. During the pendency of the litigation, on June 14, 1996, the Town's Tax Collector filed a "Tax Collectors Lien Certificate" (the "Certificate"), naming Pagurko as the party against whom the taxes were assessed, and asserting an amount due of $3,331.23 in taxes plus costs, which brought the total due to $3,726.57.

On July 29, 1996, the Superior Court entered a Decision and Order (the "Decree") in which it set forth the elements of a settlement reached by the parties. At the outset the court noted that, in an earlier ruling, it had held that the Kanes' interest was superior to that claimed by Alexander.

The court summarized the agreement as follows:

The parties present for Court approval a settlement with the following elements:

1. Francis J. Pagurko and Mitchell and Alice Kane are enjoined from

   a. Inhabiting or permitting to be inhabited any structure on the land which does not have an adequate subsurface septic system and an adequate supply of potable running water.

   b. Any condition which meets the definitions of Title 30–A of an automobile graveyard, automobile recycling business or junkyard without a permit.

   c. Maintaining on the premises any unsafe or unsanitary conditions including but not limited to accumulation of refuse or garbage on the land.

2. The parties agree the principal amount of the Town's statutory lien on Map R2, Lot 28 lien [sic] is $11,700.00. Of the $11,700.00, Francis J. Pagurko shall pay $8,000.00 plus interest and Mitchell and Alice Kane shall pay $3,700

plus interest pursuant to the provisions of paragraph 4 below.

3. Francis J. Pagurko will provide the Town a separate security interest in Map R2, Lot 28.

4. Francis J. Pagurko shall pay the Town $8,000.00 plus interest within six months of the date of this Order. Mitchell and Alice Kane will pay to the Town on a monthly basis $56.16 during this six months. If Francis J. Pagurko fails to pay the $8,000.00 plus interest within six months, he shall execute an amendment to the Installment Sales Agreement including the balance of Map R2, Lot 28 which he reserved in the Installment Sales Agreement. Upon that occurrence, Mitchell and Alice Kane shall be responsible for the whole remaining balance of the $11,700.00 plus interest, amortized over 7–1/2 years and their payments shall increase to $174.13. Upon the occurrence the Town shall consider any issues relating to the unlawful subdivision of Map R2, Lot 28 resolved.

If Mitchell and Alice Kane fail to make payments under this paragraph, the parties agree that the Town may take possession upon maturity of the lien on December 14, 1997.

If the payments are made, the Town may not take possession of the property at the maturity of the lien and shall execute a quitclaim deed to Mitchell and Alice Kane upon completion of all payments.

. . . .

5. The Town will complete the installation of an adequate subsurface septic system which includes installation of a septic tank, connection of a septic tank to the mobile home of Mitchell and Alice Kane; and repairing the earth work as required over the existing bed.

. . . .

The court entered judgment in favor of the Town against the Kanes and Pagurko consistent with the approved settlement

and dismissed all counterclaims and cross-claims with prejudice.

The Kanes made their six payments of $56.16, and began to make the larger payments required because, we can only assume, Pagurko defaulted. We do not know from the record whether Pagurko ever performed his other obligations under the Decree. By a statutory notice[2] dated November 13, 1997, (the "Notice") the Town notified Pagurko by certified mail at his Florida address that "on December 15, 1997, the tax lien mortgage will be foreclosed and your right to recover your property by paying the taxes, interest, and costs that are owed will expire."[3] The Town did not provide the Kanes with any notice of the pending automatic foreclosure.

On September 18, 1997, about two months prior to the date set in the notice for the automatic foreclosure, the Kanes filed a voluntary bankruptcy petition under Chapter 7. The docket of that case does not indicate assumption of the Contract, or the Decree, nor does it indicate any action by the Town to proceed against the Property. While the Chapter 7 schedules were not included in the appellate record, the docket reflects that on November 4, 1997, the Chapter 7 trustee filed his "Combined Report of Abandonment of residence at Route 123 in Harpswell, ME and Report of No Distribution." The Kanes received their discharge on January 6, 1998, and the case was closed on January 9, 1998.

The Kanes tendered payments in November and December, 1997 and January,

1998, but the Town refused those payments. On January 14, 1998, eight days after the Kanes received their discharge, the Town wrote to them and informed them that their obligations to the Town "are now several months delinquent." The following day, the Town's then counsel wrote to the Kanes' then counsel informing him that the Kanes "have failed to make the last three months' payments." Mr. Kane testified that on the last business day of January, 1998, after receiving the January 14 letter from their attorney, he went to Town Hall accompanied by his wife and a friend and offered the three delinquent payments, which the Town refused. The Kanes' counsel responded to Town counsel a few weeks later that the Town had demanded payment of the full $11,000.00 balance, which was an impossibility for his clients, but that "we reiterate our desire to get current with the monthly payments."

On April 5, 1999, the Town, representing itself as the owner of the Property, served the Kanes with a notice to quit pursuant to 14 M.R.S.A. § 6002 *et seq.* On May 17, 1999, the Town brought a complaint for forcible entry and detainer (the "FED action") in state court.

On June 2, 1999, the Kanes filed the present voluntary petition under Chapter 13. Schedule A listed the Kanes' interest in the Property as "Equitable interest by virtue of recorded installment sales cont.", with a value of $50,000.00 and two secured claims in the amounts of $16,000.00 and $11,000.00.[4] The claims are identified in

---

2.  36 M.R.S.A. § 943.

3.  The applicable provision of the statute provides:

    If the tax lien mortgage, together with interest and costs, shall not be paid within 18 months after the date of the filing of the tax lien certificate in the registry of deeds, the said tax lien mortgage shall be deemed to have been foreclosed and the right of redemption to have expired.
    The municipal treasurer shall notify the party named on the tax lien mortgage and each record holder of a mortgage on the

real estate not more than 45 days nor less than 30 days before the foreclosing date of the tax lien mortgage.... If notice is not given in the time period specified in this section to the party named on the tax lien mortgage or to any record holder of a mortgage, the person not receiving timely notice may redeem the tax lien mortgage until 30 days after the treasurer does provide notice in the manner specified in this section.
    36 M.R.S.A. § 943 (*passim*).

4.  Two other unrelated secured creditors were subsequently added by amendment.

Schedule D as owed to the Town (the former) and Litchfield Financial Corp. ("Litchfield") (the latter). Litchfield was the holder of the mortgage granted by Pagurko.

The Town filed a motion for relief from stay to continue the FED action (the "Motion") seven days later. The Kanes responded to the Motion, contending that the foreclosure of the tax lien was not valid as to them because they were not given notice, thereby violating Maine law and the Due Process Clause of the Fourteenth Amendment. On August 6, 1999, the Kanes filed an adversary proceeding (the "Adversary Proceeding") against the Town, Pagurko, and Litchfield to determine the validity, priority and extent of liens.[5]

The bankruptcy court held a hearing on the Motion on August 9, 1999. Judge Goodman granted the Motion on the grounds that (1) the Kanes had no equity in the Property since "by reason of the Chapter 7 proceeding and the failure to assume the executory contract and the passing of it through the bankruptcy to the debtor, that the debtor has no interest in this property," and (2) that the Property was not necessary to an effective reorganization. He continued:

The debtor admitted that at least with respect to the time of the Chapter 7 proceeding the Town of Harpswell had a properly perfected security interest in the real property and placed a great deal of emphasis on the fact that the Town had refused payments from the date of the Chapter 7 forward, but argued no legal basis upon which there was any requirement for the Town to take any payments after that date. There was no reaffirmation of the debt by agreement of the parties and no tender of the full payment due, and the Court finds that the Town of Harpswell had no obligation to receive payments after that date. It is for these reasons that the Court grants the relief from

stay to the Town of Harpswell to proceed as it may deem appropriate in the state court proceedings.

The Kanes then moved for further findings of fact, which resulted in the following order:

The [Town] met its burden of proving that the debtors had no equity in the property. The debtors' rights, if any, in the property were created by an installment sales contract as modified by the Superior Court.... Debtors' counsel admitted at the hearing on relief from stay that the installment contract at issue was an executory contract. There was no evidence offered to show that the Debtors assumed and preserved their rights, if any, in the executory installment sales contract in their prior Chapter 7 case. The installment contract was deemed rejected by operation of law in the prior case, and, after rejection, the Trustee should have surrendered the property. The later-filed Chapter 13 cannot create property rights where none exist. 11 U.S.C. § 1322(b)(7) precludes the debtors from treating the installment contract as assumed within their Chapter 13 plan. *Matter of Benson*, 76 B.R. 381, 382 (Bankr.D.Del.1987) (In Chapter 13 after conversion from Chapter 7, failure of the Chapter 7 Trustee to assume or reject the executory contract within 60 days of order for relief resulted in the contract being deemed rejected, and as such, it could not be paid out in the plan in the later Chapter 13.); *See also In re Sheard*, 1999 WL 454260 (Bankr.E.D.Pa. June 24, 1999).

Equally as important, ... the debtors failed to offer any evidence to support their claim that the property was necessary to a reorganization.

The Kanes filed an appeal of the order granting relief on August 23, 1999. On October 15, 1999, Judge Goodman held a telephonic pretrial conference in the pend-

**5.** Adversary Proceeding No. 99–2052.

ing adversary proceeding. He dismissed the matter without trial with the following order:

> This matter arises from the Debtors' adversary complaint seeking a determination of the nature, extent, validity and priority of liens in certain property as defined in the complaint (herein "Property"). However, the Court previously determined, among other things, that the Debtors have no equity in the Property. (See Order granting the Town of Harpswell's Motion for Relief from Stay.) The Debtors, through counsel, acknowledge that although they have appealed the order granting relief from stay, they have not obtained a stay pending appeal. Without a stay, the Debtors concede that they are bound by the Court's prior determination that they have no equity. They concede that without equity in the Property, the Court does not have jurisdiction over the subject matter of this adversary proceeding. For these reasons, the Court concludes that it does not have jurisdiction and it is hereby ORDERED that this adversary proceeding is dismissed without prejudice.

There was no appeal from the dismissal order.

## II. Positions of the parties

The Kanes argue that the motion for relief from stay was improperly granted because the Town's right to possession was based solely upon its foreclosure of a statutory lien, which lien had been modified by the Decree and which was not properly foreclosed because the Kanes had made or tendered all performance required from them thereunder.

The Town's arguments are multifarious:

A. The [Kanes] failed to show that the property was necessary for their effective reorganization.

B. The doctrine of issue preclusion prevents the [Kanes] from claiming that they have any equity in the Property.

C. The [Kanes] have no equity in the Property because the Contract was deemed rejected in their prior Chapter 7 case.

D. The Town had no obligation to provide the [Kanes] with further notice of the foreclosure of its lien upon the Property.

E. The [Kanes] are judicially estopped from claiming that they have any equity in the Property.

F. The [Kanes] have lost all rights to the Property because they did not assume the [Decree] in their Chapter 7 case.

G. If the [Decree] is not an executory contract, then it is a secured transaction subject to the provisions of § 521(2) of the Bankruptcy Code and the [Kanes] lost all rights that they had to retain the Property by not reaffirming that obligation or redeeming the Property from the Town's lien in their Chapter 7 case.

H. The Town cannot be estopped from refusing additional payments upon the obligation secured by the now foreclosed lien upon the Property.

## III. Standard of review

■ There are no factual disputes on the record before us. We review the bankruptcy court's legal conclusions *de novo*. *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997).

## IV. Discussion

The decision on appeal rests upon the effect of the prior Chapter 7 case on the Kanes' rights in the Property and what constitutes property of the estate in both the prior Chapter 7 and the present case. As a result, we must explore what came before the Motion.

### A. The nature of the Kanes interest in the Property

■ What constitutes property of the estate is a federal question to be resolved

222

under 11 U.S.C. § 541. However, the nature and extent of the debtor's interest is determined by reference to nonbankruptcy law. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). State laws stake out the dimensions of a debtor's interest in property. *In re Nejberger,* 934 F.2d 1300, 1302 (3d Cir. 1991). In this case, Maine law determines the parties' rights in the Property.

In *Linscott v. Buck,* 33 Me. 530 (1851), the Supreme Judicial Court of Maine discussed the law applicable to contracts for the sale of land. The purchasers in that case were to pay the price in full before obtaining title, the same situation as in the present case. The court articulated the following rule:

> In law, contracts for the sale of land are considered as executory agreements, not attaching to the land, and for the violation of which, damages, only, are recoverable. But in equity such contracts are treated as if they had been executed. The purchaser is regarded as owner of the land, and the vendor as owner of the purchase money, and as seized in trust for the purchaser. The trust attaches to the land so as to bind every one claiming through the vendor with notice.

*Id.* at 534. *See also Thompson v. Skowhegan Savings Bank,* 433 A.2d 434, 436 (Me. 1981) (holding that although the vendor of land under an installment sale contract retains legal title, the vendee is the equitable owner) (citing *Bailey v. Coffin,* 115 Me. 495, 99 A. 447 (1916); *Cross v. Bean,* 83 Me. 61, 21 A. 752 (1890)).

Termination of the rights of a purchaser under a contract for sale of real estate parallels the foreclosure of a mortgage. 14 M.R.S.A. § 6203–F. The residual rights of the title holder are so limited that the Maine Supreme Judicial Court held earlier this year that the record owner is not a necessary party when the prospective buyer under an installment sale contract commences an action to enforce a restrictive covenant. *Tomhegan Camp Owners Assoc. v. Murphy,* 2000 WL 175252, *2, ___ A.2d ___, ___ (Me. Feb. 16, 2000). The purchaser under the contract does not have all of the rights of the record owner. For example, in *Mason v. Town of Readfield,* 715 A.2d 179 (Me. 1998), it was held that the right to seek a poverty tax abatement belongs to the title holder against whom taxes are assessed, notwithstanding the purchaser-possessor's contractual obligation to pay those taxes, because the purchaser's interest is only indirectly affected.

We hold that under Maine law the purchaser under an installment sales contract holds an equitable interest in real property. Upon a bankruptcy filing, such an interest becomes property of the debtor's estate. 11 U.S.C. § 541(a)(1). That conclusion is further supported in the present case by the manner in which the Kanes' rights were extended to other property owned by Pagurko by the Decree. Thus, when the Kanes filed their petition under Chapter 7, their interest in the Property, and their interest in the remaining real estate owned by Pagurko, became property of their bankruptcy estate.

**B. Is the Contract executory?**

The next issue is whether the Contract, as modified by the Decree, was an executory contract. The bankruptcy court held that it was and that the requirements of 11 U.S.C. § 365 applied. For the reasons stated below, we disagree.

The Bankruptcy Code does not define the term "executory contract." Section 365 simply provides that " ... the trustee, subject to the court's approval, may assume or reject any executory contract ... of the debtor." *See* 11 U.S.C. § 365(a). The legislative history provides that an executory contract is a contract on which performance remains due to some extent on both sides. S.Rep. No. 989, 95th Cong., 2d Sess. 58 and H.Rep. No. 595, 95th Cong., 1st Sess. 347, reprinted in 1978 U.S.Code Cong. & Admin.News 5787,

5844, 5963, 6303 (1979). We will not summarize the varying approaches in determining whether a contract should be considered executory, but we note that the case law on the issue is voluminous.

Courts have struggled with the specific issue of whether installment land sales contracts are executory contracts and a split of authority has developed. While some courts consider installment land sales contracts to be executory because performance remains on both sides, numerous other courts categorize them as non-executory because they are in the nature of a sale and security device. *Compare Terrell v. Albaugh (In re Terrell)*, 892 F.2d 469 (6th Cir.1989)(purchaser's interest in land contract was executory because both parties had unperformed obligations) *and Speck v. First National Bank of Sioux Falls (In re Speck)*, 798 F.2d 279 (8th Cir.1986)(installment sale contract is executory because obligations remain on both sides) *and Sundial Asphalt Co., Inc. v. V.P.C. Investors Corp. (In re Sundial Asphalt Co., Inc.)*, 147 B.R. 72 (E.D.N.Y.1992)(contract for sale of land remains substantially unperformed and executory until specific performance is ordered) *with In re Heward Brothers*, 210 B.R. 475 (Bankr.D.Idaho 1997)(installment land sale contract was security device not an executory contract under Section 365); *Horton v. Rehbein (In re Rehbein)*, 60 B.R. 436 (9th Cir. BAP 1986)(contract for deed was not an executory contract where debtor had fully performed by placing deed in escrow). The Collier treatise sets forth the following analysis on the issue:

> In some places, it is common for purchasers of real estate to enter into installment land sales contracts, under which at the end of the installment payments the seller transfers title to the buyer. In virtually every other respect, such as responsibility for taxes, insurance and maintenance, the transaction is indistinguishable from a sale in which the seller takes back a mortgage to secure payment. Because of the similarity of such contracts to secured mortgage loans, courts have often treated them as secured debts rather than executory contracts. The classification of a particular contract depends on the terms of the transaction. If the seller has no significant duty to the buyer other than to convey title upon completion of payments, the contract should be found to be a secured debt and not an executory contract. Treatment of the contract as a secured debt rather than an executory contract has a number of ramifications, including the inapplicability of section 365.

*3 Collier on Bankruptcy* ¶ 365.02[1][a] (15th ed. rev.2000)(footnote omitted).

Moreover, courts disagree on the source of law to be used to evaluate the status of installment land sales contracts. While some courts focus on the definitions that have evolved under federal bankruptcy law, *see In re Heward Brothers*, 210 B.R. 475 (Bankr.D.Idaho 1997); *In re Scanlan*, 80 B.R. 131 (Bankr.S.D.Iowa 1987), other courts have ruled that the nature and extent of parties' contractual obligations depend upon the terms of the particular contract and the classification of such contracts under relevant state law, recommending a case by case analysis. *Leefers v. Anderson (In re Leefers)*, 101 B.R. 24 (C.D.Ill.1989).

We agree with the latter approach and believe that courts cannot categorize all installment sales contracts as either executory or non-executory. The categorization of an installment sales contract requires a case by case analysis based upon the specific terms of the contract and the parties' rights and obligations under state law. *See Mitchell v. Streets (In re Streets & Beard Farm Partnership)*, 882 F.2d 233, 234 (7th Cir.1989). Thus, an installment land sales contract cannot be considered an executory contract (so as to trigger the requirements of assumption or rejection) if under applicable state law and the particular transac-

tion, the contract is in essence a sale and financing device.

■ Applying these principles to the present case, we rule that the installment land sales contract is not an executory contract because under the terms of the particular transaction and in accordance with Maine law, the Contract was essentially a sale of real estate pursuant to which the Debtors became the equitable owners. Under the Contract, Pagurko had no significant duty to the Kanes, other than to convey title upon completion of the installment payments. Under well-settled Maine law, the transaction was in essence a sale by Pagurko to the Kanes, not an executory contract. As a result, when their Chapter 7 trustee abandoned the Property, the Kanes regained whatever rights therein they had acquired under the Contract and the Decree.

### C. Did the Town's issuance of the Notice violate the automatic stay?

■ At the time that the Town issued the Notice, the Property was property of the Kanes' Chapter 7 estate. The next question is whether the issuance of the Notice violated the automatic stay.

The automatic stay prohibits, *inter alia*

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce any lien against property of the debtor any lien to the extent that such lien secures a claim that arose before the

commencement of the case under this title; . . . .

11 U.S.C. § 363(a)(3)–(5).

The Town's rights against the Property arose from the Certificate and the Decree. Both events antedate the filing of the Chapter 7. However, the Notice, necessary to implement an automatic foreclosure under Maine law, 36 M.R.S.A. § 943, was not given until November 13, 1997.[6] We appreciate that § 943 requires notice only to "the party named on the tax lien mortgage", which in this case was Pagurko.[7] However, whatever procedural requirements are imposed by Maine statutes, the effect of the Notice was perfection of a lien against property of the estate which arose before the commencement of the case, and hence violated the automatic stay. We look next at the effect of that violation upon the effectiveness of the Notice.

■ In *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir. 1997), our Court of Appeals explicitly endorsed the majority rule that actions taken in violation of the automatic stay are void. *Id.* at 975. While the court recognized that "equitable considerations may alter some outcomes," *id.*, that gloss is not applicable here as the Town never sought a *post facto* annulment of the stay. As a result, we hold that the Notice was void, and the Town did not obtain any rights thereunder. It follows, therefore, that the statutory automatic foreclosure, lacking a valid precedent notice, is invalid. The Kanes retained their interest in the Property unaffected by that invalid Notice.

This *status quo* continued after the filing of the current Chapter 13 case. Thus, in granting the motion for relief from stay to continue with the FED action, the bank-

---

**6.** While the Chapter 7 trustee's report of abandonment was filed on November 4, 1997, the objection date was December 2, 1997, and the final decree was not entered until January 9, 1998. Abandonment by a trustee requires notice and a hearing. 11 U.S.C. § 554(a).

**7.** We need not reach the issue, but *quare* whether the Town's participation in the De-

cree, with the significant additional rights which were granted to the Kanes, would make it inequitable for it to exercise its right of strict foreclosure without notice to the Kanes as well as to the record owner. We also do not reach the issue of whether this would violate the Due Process clause.

ruptcy judge erred in two particulars. First, he assumed that the Town had validly foreclosed its tax lien. Second, he ruled that the Contract was executory and the Kanes had no rights thereunder (and hence no equity in the Property) since they did not assume the Contract in the Chapter 7 case.[8] Finding as we do contrary to the views of the bankruptcy court, we REVERSE the grant of the motion for relief from stay and REMAND for further proceedings consistent with this decision.

---

8. This ruling, of course, deprived the Kanes of the opportunity to present evidence on the issue of whether the Property was necessary for their effective reorganization. Because of the grounds upon which the Adversary Proceeding was dismissed, without trial and without prejudice, there was no issue preclusion. *Lombard v. United States,* 194 F.3d 305, 312 (1st Cir.1999).