UNITED STATES of America,
Plaintiff,

v.

Howard LEWIS, Betty Lewis, Olivia Lewis, La Salle National Bank and Winter & Hirsch, Inc., Defendants.

No. 65 C 2193.

United States District Court
N. D. Illinois, E. D.

Sept. 26, 1967.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for plaintiff.

Chauncey Eskridge, McCoy, Ming & Black, Chicago, Ill., for defendants Olivia Lewis and La Salle Nat. Bank.

## MEMORANDUM AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ROBSON, District Judge.

The priority of right between the Federal Government, pursuant to a lien and notice of levy for income taxes, and the taxpayer's divorced wife-grantee under a divorce settlement, to a residence held under an Illinois land trust, is raised by the cross motions for summary judgment.

The interpretation to be given the Illinois Supreme Court decision of Chicago Federal Savings and Loan Association v. Cacciatore, 25 Ill.2d 535, 185 N.E.2d 670 (1962), is critical to a determination of the rights of the parties.

There is no serious dispute as to the facts, which are as follows: The title to the residence property located at 4313 Prairie Avenue, Chicago, Illinois, was conveyed October 18, 1951, to the La Salle National Bank as trustee under Trust No. 7092, with Howard Lewis (the husband) as beneficiary. On December 23, 1954, the United States assessed income taxes for 1950 against Howard and Betty Lewis for $10,353.74 taxes, $2,401.53 penalties, and $2,316.97 interest. The balance due, after credits, was $10,256.08, and interest. In 1960, Betty and Howard Lewis executed a waiver extending the statute of limitations for 1950 income tax deficiency in the amount of $12,072.24 until December 31, 1965. On November 7, 1955, notice of tax liens were filed by the United States with the Cook County Recorder of Deeds.

On June 26, 1962, the Government filed a notice of levy for $14,364.64 on the La Salle National Bank upon the beneficial interest of Howard Lewis. On September 4, 1962, a divorce decree in cause 62 C 14885 in Cook County awarded the residence to *Olivia* Lewis, and directed Howard Lewis to convey the premises to her. On October 15, 1962, there was recorded a quitclaim deed from Howard Lewis to Olivia, and on October 23, 1963, he assigned his beneficial interests in the trust to Olivia. Howard and Betty Lewis have not answered the complaint and are in default.

By its complaint, the Government seeks a determination of tax liability of Howard and Betty Lewis for $10,256.08, and interest, and that it has a lien upon their real and personal property and that the lien on the residence is a first one, supe-

rior to the claims of all the defendants. Further, it prays a foreclosure of its lien. Its motion for summary judgment seeks a finding that its lien is superior to the interest of Olivia Lewis in the real estate. Olivia Lewis' crossmotion for summary judgment prays a determination that the lien of the United States is not superior to her interests.

While the nature of the property interests of the taxpayer is determined by state law, the Federal law prescribes the mode of procedure for the effectuation of the lien (United States v. Clinton, 260 F.Supp. 84 (S.D.N.Y.1966); United States v. Goldberg, 3 Cir., 362 F.2d 575 (1966); Division of Labor Law Enforcement, Department of Industrial Relations, State of California v. United States, 9 Cir., 301 F.2d 82 (1962). See also United States v. Equitable Life Assurance Society of the United States, 384 U.S. 323, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966)).

The Federal Tax Regulations 1959, p. 1636, § 301.6331–1(a), provides:

"If any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand, the district director * * * may proceed to collect the tax by levy upon any property, or rights to property, whether real or personal, tangible or intangible, belonging to such person or on which there is a lien provided by [the statute] * * * for the payment of such tax. * * * *Levy may be made by serving a notice of levy* on any person in possession of, or obligated with respect to, property or rights to property subject to levy. * * * *" (Emphasis added.)

See also United States v. Manufacturers National Bank, 198 F.Supp. 157 (N.D. N.Y.1961); Rosenblum v. United States, 300 F.2d 843 (1st Cir. 1962).

In the *Cacciatore* case, there was a notice of lien by the Government but no levy. In that case, the court stated, at 540, 541 of 25 Ill.2d, at 672 of 185 N.E. 2d:

"* * * [T]he Federal lien against the trust beneficiary did not attach to the real estate to which the beneficiary had no title under the law of this State as is hereinafter more clearly set forth."

* * * * * *

"* * * 'The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property * * * sought to be reached by the statute." * * *'

"Only when the Federal tax lien has attached to the taxpayer's State-created interests, does the Federal law determine the priority of competing liens against the taxpayer's property or rights to property. * * *'"

The court also stated, at 543, at 674 of 185 N.E.2d:

"* * * Cacciatore's beneficial interest is personal property as distinguished from real estate by the terms of the recorded trust deed, the trust agreement itself, and by settled Illinois law."

The court also said, at 544, at 674 of 185 N.E.2d:

"* * * In this case the record title in Mutual National as trustee was clear and unencumbered excepting for the first mortgage. The loan by Peilet was made on the sole security of the real estate, and to hold that his failure to inquire into the identity and nature of the undisclosed beneficial interests, sacrifices his position as a second mortgagee, would severely dislocate or even

destroy local property concepts and relationships.

"The basic question here is not as to the nature of the beneficiaries' interest in the trust—this is concededly personal property—nor whether the lien of the government attaches to the real estate itself—*concededly, it does not— nor is it as to whether the interest of the taxpayer can be subjected to the claims of his creditors*—all parties agree that it can be, either by a creditor's bill, *or other appropriate and timely proceedings.* The crux of the case as we understand the government's position, is the contention that the lien attached to the rights of the beneficiary-taxpayer at the time the lien was filed. As of that date, July 29, 1957, no encumbrance existed upon the real estate in question with the exception of the first mortgage which the government concedes to be superior to its lien. At that time, pursuant to the provisions of the trust deed and the trust agreement, the *taxpayer-ben-*eficiary did have certain rights under *the trust indenture, including the right to direct a conveyance of the real estate to himself at any time.* Had this been done at that point, the taxpayer-beneficiary would have received the real estate back subject only to the first mortgage and the lien of the government's tax claim which would have thereupon attached. The government, as we understand it, therefore now contends that since its lien attached to the rights of the taxpayer at that time and the taxpayer had the right to regain the property subject only to the lien of the first mortgage, the government should therefore stand in the taxpayer's shoes, able at the present time to proceed against the real estate, subject only to the rights of the prior encumbrance as of July 29, 1957, to-wit: the first mortgage. We find no fault with this argument as it applies to the date of filing the lien, and the government could well have successfully pursued its remedies at that time. Since

this was true, the government now contends that the taxpayer could not thereafter, by his voluntary action, diminish the government's position. *The government took none of the steps provided for the seizure of personal property provided by the Internal Revenue Code * * *.* By failing to do so, it placed itself in a position similar to where its lien is filed against a depositor in a bank. While the lien does attach to the depositor's rights in the account, *in the absence of a levy* a transfer of the account by check or otherwise to a third party who takes it in good faith and for a good consideration, gives to the transferee a claim superior to that of the government. * * * We have before us a situation in which the rights of innocent parties, heretofore secure in an area of stable real-estate law, have intervened and require consideration." (Emphasis added.)

■  The court concludes that the motion for summary judgment by the Government must be granted and that of Olivia Lewis must be denied. It is of the opinion that the notice of lien *and* notice of levy by the Government upon the La Salle National Bank on the beneficial interest of Howard Lewis, prior to the divorce decree and the transfers made pursuant thereto, establish the Government's earlier and prior right over that of the subsequent grantee.

There can be no question that under the *Cacciatore* case, supra, that under Illinois law the interest of the transferor under the land trust is personal property, and he does not have a legal or equitable interest in the real estate. The differentiation between the instant situation and the *Cacciatore* one is that here there was not only a notice of lien—as in the *Cacciatore* case—but a notice of *levy* as well. In the *Cacciatore* case, the Illinois Supreme Court stated that the Government lost its rights against an innocent purchaser where it "took none of the steps provided for the seizure of personal property provided by the Internal Revenue Code * * *." Further, it

said, "While the lien does attach to the depositor's rights in the account, *in the absence of a levy* a transfer of the account by check or otherwise to a third party who takes it in good faith and for a good consideration, gives to the transferee a claim superior to that of the government." (Emphasis added.)

It is ordered that the motion of the United States Government for summary judgment is granted and the motion of Olivia Lewis for summary judgment is denied.