In re Terrence M. CAVANAUGH, Debtor.

BANK OF LYONS, a corporation organized and existing under the laws of the State of Illinois, Plaintiff,

v.

Terrence M. CAVANAUGH, Harris Bank Hinsdale, the United States of America, and James E. Dvorak, Chapter 7 Trustee, Defendants.

Bankruptcy No. 88 B 9317.
Adv. No. 89 A 713.

United States Bankruptcy Court, N.D. Illinois, E.D.

April 13, 1993.

David Giangrossi, Chicago, IL, for plaintiff.

John Lindquist, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter is before the court on cross motions for summary judgment of the Internal Revenue Service and the Bank of Lyons on the Bank of Lyons' complaint to determine the relative priority of the lien

claims of the Bank of Lyons and the Internal Revenue Service (the "United States") in the proceeds of property sold by the Trustee, James Dvorak. For the reasons stated below, the court grants summary judgment for the United States.

### FACTS

■ On August 30, 1983, the Debtor purchased the beneficial interest in Bank of Lyons Land Trust 1745 ("BLLT") from Sandra Campagna.[1] The BLLT held property at 11327 Hiawatha Lane in Indian Head Park, Cook County, Illinois. The purchase price of the property consisted of the assumption of a first mortgage held by Citicorp and a payment of $30,000 in cash. The Debtor borrowed the $30,000 from Harris Bank Hinsdale. In return, Harris Bank Hinsdale took an assignment of the Debtor's beneficial interest in BLLT as collateral.

■ At the time the Debtor acquired and assigned the beneficial interest in BLLT, the Debtor owed several years of unpaid personal income taxes to the United States. In fact, in April of 1983, several months before the Debtor acquired and assigned the beneficial interest in BLLT, the United States had assessed the Debtor for personal income tax liabilities in the amount of $11,151 from the 1976 and 1978–1980 tax years. On November 23, 1983, after the Debtor's August 30, 1983 acquisition and assignment of BLLT, the United States filed tax liens totaling $18,194.13 against the Debtor with respect to those assessed tax liabilities with the Cook County Recorder of Deeds. At that time, the Debtor

resided in Cook County. For reasons that are less than clear, the United States subsequently filed similar liens on July 2, 1984 and December 19, 1986 with the Cook County Recorder of Deeds. The amount now due on the United States' claim is $35,310.82.[2]

In 1985, the Debtor sought to refinance the Harris Bank Hinsdale loan. To facilitate the refinancing, the Debtor assigned his beneficial interest in BLLT to Dorothy Crossett, an employee of Harris Bank Hinsdale. A new land trust, Harris Bank Hinsdale Land Trust L–1153 ("HBHLT"), was created, naming Crossett as beneficiary. The Bank of Lyons deeded over the title to the property to Harris Bank Hinsdale. Crossett then assigned the beneficial interest in HBHLT to the Debtor.

On August 20, 1986, the Bank of Lyons obtained a judgment against the Debtor in a mortgage foreclosure action in the Circuit Court of Cook County for $28,018.[3] The Bank of Lyons recorded that judgment with the Cook County Recorder of Deeds on August 25, 1986. On February 25, 1988, the Bank of Lyons initiated supplemental proceedings against the Debtor pursuant to I.R.C.P. 2–1402 to collect the judgment. On March 4, 1988, the Bank of Lyons served a citation to discover assets on the Debtor. In his response to the citation, the Debtor revealed that he was the sole owner of the beneficial interest in HBHLT. Accordingly, on May 13, 1988, Lyons served a citation to discover assets on Harris Bank Hinsdale as the land trustee of HBHLT, the legal owner of the real estate. Thereafter, the Bank of Lyons

1. In a land trust arrangement, the true owner of the real estate creates a trust, and the corpus (res) of the trust is the real estate. Upon creation the land trust, the true owner of the real estate becomes the beneficiary of the trust and owns only a beneficial interest in the trust res. The legal title to the real estate is held by the land trustee, usually a bank or other financial institution. Nevertheless, the beneficiary enjoys the right to the earnings and proceeds of the real estate and the power of direction to the trustee to deal with the title. This arrangement results in the conversion of the true owner's interest in the real estate from a real property interest to a personal property interest. This accords the true owner several advantages, such

as making transfers of ownership or of an interest in ownership, such as a security interest, much less complex. In addition, the land trustee is the record owner, so the identity of the true owner of the real estate is not publicly available. *See In re Einoder*, 55 B.R. 319 (Bankr.N.D.Ill.1985).

2. The $35,310.82 does not appear to include any penalties. Liens for penalties for nonpayment of taxes are avoidable in a Chapter 7 case. *See* Bankruptcy Code § 724(a).

3. The amount now due on that judgment is approximately $35,000.

filed a motion for turnover of the trust property pursuant to I.R.C.P. 2–1402(b)(5). On June 16, 1988, the eve of the hearing of the turnover motion, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. The Chapter 11 case failed and subsequently was converted to a Chapter 7 case.

On April 14, 1989, this court entered an order granting the trustee the authority to sell the land held by HBHLT for the sum of $115,000, free and clear of all liens and encumbrances. On May 3, 1989, the property was conveyed by Harris Bank Hinsdale, as land trustee of HBHLT, to the buyers. The net proceeds after the costs of sale were some $99,000. Approximately $65,000 of the proceeds of the sale were paid to Harris Bank Hinsdale in satisfaction of its first lien against the real estate. The balance of the proceeds after the Harris Bank Hinsdale payoff was $35,704.51. The United States and the Bank of Lyons each claim to have a first priority lien on the $35,704.51 balance. The validity and priority of those alleged liens is the subject of the instant dispute.[4]

### JURISDICTION AND PROCEDURE

■ This court has jurisdiction over this matter under 28 U.S.C. § 1334(b) as a matter arising under § 506 of the Bankruptcy Code. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K) as a proceeding involving the determination of the validity, extent or priority of liens.[5] This proceeding is before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to this court for hearing and determination.

4. By agreement of the parties, the balance of the proceeds was given to the United States to hold pending the resolution of this dispute. This was done to halt the running of interest on the United States' claim.

5. The parties were asked to file briefs as to whether the court has jurisdiction over this dispute between two creditors as to the priority of competing lien claims in property in which the estate has no equity. *See Matter of Kubly*, 818

### STANDARD FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), made applicable to adversary proceedings in bankruptcy cases by Fed.R.Bankr.P. 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### DISCUSSION

The instant dispute requires the court to determine the relative priority of the competing lien claims of the United States and the Bank of Lyons in the proceeds arising from the sale of the res of HBHLT, the Indian Head Park real estate. The Bank of Lyons argues that the underlying res of the land trust became property of the estate in this bankruptcy case. Therefore, the Bank of Lyons claims, the United States' tax lien could only attach to the proceeds of the sale of the trust res if the United States filed a tax lien against Harris Bank Hinsdale, as land trustee for HBHLT, and against the real estate. Since the United States did not file its lien against Harris Bank Hinsdale (or against

F.2d 643, 645 (7th Cir.1987). All parties argued that the estate has an interest in the outcome of this dispute, despite the lack of equity in the property, because the size of the United States' priority unsecured claim will be determined by the outcome of this proceeding. *See id.* at 645; Bankruptcy Code §§ 506(a), 507(a)(7). The court agrees, and finds that it has proper jurisdiction.

the underlying realty), the Bank of Lyons claims that the United States' lien never attached to the real estate and thus could not attach to the proceeds of the sale of that real estate.

■ The fact that the HBHLT res may have become property of the estate when the Debtor filed his bankruptcy petition is irrelevant. It is probably true that both the beneficial interest and the underlying realty became property of the estate when the Debtor filed this Chapter 11 petition. *See generally In re Ainslie and Belle Plaine Limited Partnership*, 145 B.R. 950 (Bankr.N.D.Ill.1992). However, that fact does nothing to resolve the priority dispute. This is true because the priority dispute is not resolved by reference to bankruptcy law. Instead, the priority dispute is to be resolved by reference to the interaction between state law and applicable nonbankruptcy federal law. Thus, the real issue in this case is whether the United States' lien had priority over the Bank of Lyons' lien prior to the filing of the bankruptcy petition. The court finds that it did.

■ A federal tax lien attaches to all "property" and rights to property of a delinquent taxpayer automatically upon notice of an assessment and demand for payment of delinquent taxes. 26 U.S.C. §§ 6321, 6322 (1992). "Property" is a concept which draws its definition from state, not federal, law. *Aquilino v. United States*, 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960). Under Illinois law, the property of a beneficiary of a land trust does not include the res of the land trust, since the land trustee has full and complete title to the real estate in the trust. *Chicago Federal Savings & Loan Association v. Cacciatore*, 25 Ill.2d 535,

185 N.E.2d 670, 674 (1962). On the other hand, the beneficial interest in a land trust is clearly property of the beneficiary of the land trust, not the property of the land trustee. *United States v. Lewis*, 272 F.Supp. 993, 995 (N.D.Ill.1967); *Cacciatore*, 185 N.E.2d at 674. Thus, a federal tax lien against a beneficiary of a land trust does not attach to the underlying res in the land trust. However, a federal tax lien can attach to the beneficiary's beneficial interest in the land trust.

■ Although what constitutes property to which a tax lien can attach is governed by state law, once the tax lien has attached to the taxpayer's property, as that term is defined by state law, one must turn to applicable nonbankruptcy federal law to determine the priority of competing liens asserted against that property. *Aquilino*, 363 U.S. at 513–14, 80 S.Ct. at 1280–81. Obviously, applicable nonbankruptcy federal law here means federal tax law. Under federal tax law, a contest between the federally created tax lien and a competing lien is resolved by the first-in-time, first-in-right rule. *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). That rule is codified in IRC § 6323, which provides that a federal tax lien takes priority over all subsequent judgment liens as long as notice of the lien is filed, in accordance with IRC § 6323(f). 26 U.S.C. § 6323(a).

Under IRC § 6323(f), notice of a federal tax lien on personal property is to be filed in an office: (1) designated by the law of the state in which the property subject to the lien is situated; and (2) which is in the state, county or other governmental subdivision in which the property subject to the lien is situated. 26 U.S.C. § 6323(f)(1).[6]

---

**6.** IRC § 6323(f)(1) provides, in pertinent part, that the appropriate place for filing a notice of federal tax lien is:

. . . . .

(A) **Under State laws.—**
  (i) **Real property.—**In the case of real property, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated; and

(ii) **Personal property.—**In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated . . .

The statute also provides that if the state in which the property subject to the lien is situated does not designate an office for filing a notice of federal tax lien, such notice should be filed with the United States district court for the

Personal property is deemed to be situated at the residence of the taxpayer at the time the notice of lien is filed. 26 I.R.C. § 6323(f)(2)(B). At the time this lien was filed, Illinois had designated the office of the county recorder of deeds as the proper office in which to file such a notice. Ill. Rev.Stat. ch. 82, ¶ 66 (1987).[7]

■ In the instant proceeding, the United States' tax lien attached to all of the Debtor's property at the time the United States notified the Debtor of its assessment and demanded payment for delinquent taxes, i.e. November 23, 1983.[8] Under Illinois law, that property included the Debtor's beneficial interest in HBHLT, as personal property. *See Cacciatore,* 25 Ill.2d 535, 185 N.E.2d at 674.

■ Since any lien the Bank of Lyons might have from its pursuit of supplemental proceedings arose, at the earliest, when the Bank of Lyons initiated supplemental proceedings against the Debtor, on February 25, 1988,[9] the United States' lien takes priority over the Bank of Lyons' lien under the first-in-time, first-in-right rule enunciated in IRC § 6323, provided that the United States filed proper notice of the lien. In the instant proceeding, notice of the tax lien against the Debtor's beneficial interest in HBHLT, personal property, had to be filed in the office of the Recorder of Deeds in the county in which the Debtor resided at the time the lien was recorded. *See* IRC § 6323(f); Ill.Rev.Stat. ch. 82, ¶ 66 (1987) (section in effect at time of recording). At the time the United States record-

ed its tax lien, the Debtor resided in Cook County, Illinois. Thus, the United States' filing against the Debtor in Cook County was proper.

Consequently, the United States' lien takes priority under the first-in-time, first-in-right rule codified in IRC § 6323. The United States has first priority to the proceeds of the sale of the real estate, to the extent of its claim.

### CONCLUSION

For the foregoing reasons, the courts grants summary judgment for the United States. The United States may retain $35,310.82, the amount now due on its claim, of the $35,704.51 sale proceeds. The United States is to turn over the remaining $393.69 to the Trustee, who will hold it pending further order of this court.

---

judicial district in which the property subject to the lien is situated. IRC § 6323(f)(1)(B).

7. The Illinois statute designating the appropriate office for filing a notice of tax lien has subsequently changed. *See* Ill.Rev.Stat. ch. 82, ¶ 402 (1992). However, for obvious reasons, the office at the time the notice of lien was filed remains the appropriate office for purposes of this dispute.

8. There is some dispute as to whether the United States had made such notice and demand at an earlier point. Whether the United States acted earlier than November 23, 1983 is irrelevant, because it is clear that the United States' notice and demand occurred no later than November 23, 1983, the date of the first filing of

the tax lien. Thus, there is no question that the United States' lien arose prior to the Bank of Lyons' lien.

9. The Bank of Lyons claims that its initiation of supplemental proceedings under I.R.C.P. 2–1402 against the Debtor to collect on its judgment against the Debtor gave rise to a lien in the Bank of Lyons' favor. Whether either the initiation of supplemental proceedings or the issuance of a citation gives rise to a lien under Illinois law is a subject of some dispute. *Compare In re Lifchitz,* 131 B.R. 827 (Bankr.N.D.Ill. 1991) (initiation of supplemental proceedings creates a lien) *with In re Jaffe,* 111 B.R. 701 (Bankr.N.D.Ill.1990) (contra). Because of the court's disposition of this dispute, the court need not address this issue.