INTERNAL REVENUE SERVICE, Appellant,

v.

John Davis ORR, Appellee.

C.A. No. C–97–357.

United States District Court, S.D. Texas, Corpus Christi Division.

Jan. 14, 1998.

Joseph A. Pitzinger, III, Dept. of Justice Tax Division, Dallas, TX, for Appellant.

Ronald A. Simank, Schauer, Simank and Ledbetter, Corpus Christi, TX, for Appellee.

### ORDER ON APPEAL FROM ORDER GRANTING SUMMARY JUDGMENT AND DELIMITING THE ATTACHMENT OF APPELLANT'S LIEN TO APPELLEE'S SPENDTHRIFT TRUST

JACK, District Judge.

On this date came on to be considered Appellant Internal Revenue Service's ("IRS") Appeal from the Order Granting Summary Judgment issued by the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division. That Order granted Appellee John Davis Orr's ("Orr") motion for summary judgment, finding that the IRS's federal income tax liens attach only to the distributions which Orr received from his spendthrift trust prior to April 30, 1996: In effect, the Bankruptcy Court found that Orr's prepetition equitable interest in his future spendthrift trust income did not constitute "property" within the meaning of 26 U.S.C. § 6321. This Court reverses.

### I. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 158(a).

### II. PROCEDURAL & FACTUAL HISTORY

In 1965, Orr's grandmother created a spendthrift trust which yields the income that is at issue in the present dispute. This trust provides that "all net income of the trust shall be distributed" to Orr, provided only that Orr is competent and over the age of thirty. (Trust para. 5.) In ac-

cordance with the trust, Orr has regularly received payments of the annual income and has also been made a co-trustee. The trust income is granted to Orr unconditionally and permanently, and the trust requires the trustee to disburse all of the income to Orr at least annually.[1]

Between 1984 and 1991, Orr failed to file his federal income tax returns, incurring over $630,000 in tax liabilities. Consequently, in 1993, the IRS properly filed Notices of Federal Tax Liens pursuant to 26 U.S.C. § 6671, thereby securing payment of these tax liabilities. On November 1, 1995, Orr petitioned for bankruptcy relief under Chapter 7, and he received a discharge of personal liability on May 21, 1996. Of course, in accordance with 11 U.S.C. § 524(a)(1), this discharge did not remove the federal tax liens from Orr's prepetition property.

Months prior to receiving his discharge, in February 1996, Orr filed an adversary requesting the Bankruptcy Court to determine precisely to what property interests the federal tax liens had attached. In particular, with respect to the spendthrift trust, Orr wanted to know whether the liens attached only to prepetition income payments, or if the liens attached to his interest in the trust income such that the IRS could also collect its debt from the post-petition disbursements. That is, Orr asked the court to choose between two plausible construals of what constituted Orr's property upon filing for relief: (1) Orr owned only the income already disbursed to him from the spendthrift trust, or (2) Orr owned an interest in the spend-thrift trust which was in itself an attachable property interest. Orr preferred the former construal since it would mean that the IRS' liens are dischargeable as to his trust income which is disbursed post-petition. In contrast, the IRS maintained that the federal tax liens had attached to Orr's prepetition interest in the spendthrift trust itself, and therefore the IRS could collect its debts from all of Orr's trust income—whether disbursed prepetition or post-petition.

On April 7, 1997, the Bankruptcy Court ruled in favor of Orr—i.e., that the IRS could satisfy its tax liability only out of trust income distributions made prior to Orr's petition (i.e., through April 30, 1996).[2] In effect, the Bankruptcy Court held that, in these circumstances, Orr's interest in his spendthrift trust income was not attachable property until Orr had the right to alienate the disbursed income, even if he did have exclusive rights to all future income accrued during his life. In making this decision, that court relied on a case from 1945, *United States v. Dallas Nat'l Bank*, 152 F.2d 582 (5th Cir.1945), *modified,* 164 F.2d 489 (5th Cir.1947), *modified,* 167 F.2d 468 (5th Cir.1948), which was subsequently modified twice by the Fifth Circuit and, regardless, does not address the issue before this Court.

### III. STANDARD OF REVIEW

■ This Court has capacity to hear appeals from decisions of a bankruptcy court, *See* 28 U.S.C. § 158, and it reviews findings of fact by the bankruptcy court

---

1. The settlor originally created two trusts for Orr. Trust "A" distributed the principal to Orr in three separate payments when he reached the ages of 30, 35 and 40. Trust "B" is the trust at issue and automatically pays its full net income to Orr from the time he turned 30 years old. Trust "B" includes a spendthrift clause. Thus, in creating Trust B, the settlor explicitly created the exclusive power in Orr to collect the trust's income during his lifetime.

2. While Orr petitioned for relief on November 1, 1995, Section 541(a)(5)(A) of the Bankrupt-cy Code creates a 180-day window during which petitioner's new income will be included in the estate subjected to prepetition liabilities. Therefore, Orr's "prepetition" estate effectively included, at the least, all disbursements made through April 30, 1996, rather than through his actual petition date of November 1, 1995. *See* 11 U.S.C. § 524(a)(5)(A). The Bankruptcy Court properly identified this cut-off date (of course, the identification of this date could be made independently of how the court construed the extent of Orr's property upon filing for bankruptcy).

under the clearly erroneously standard and decides issues of law de novo. *Matter of Haber Oil Co., Inc.,* 12 F.3d 426, 434 (5th Cir.1994); *Matter of Killebrew,* 888 F.2d 1516, 1519 (5th Cir.1989).

## IV. DISCUSSION

### a. The Nature of Federal Tax Liens Issued Pursuant to 26 U.S.C. § 6321

■ When a person fails to pay federal taxes, all property rights that the person has or acquires thereafter are subject to a federal tax lien immediately and automatically. *See* 26 U.S.C. § 6321. Such a lien will attach to all property acquired during the life of the lien, including property acquired after its assessment. *Glass City Bank of Jeanette, Pa. v. United States,* 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945). While the reach of a § 6321 lien is very broad, it does not apply to property acquired after bankruptcy. *In re Connor,* 27 F.3d 365, 366 (9th Cir.1994); *see e.g., In re Braund,* 289 F.Supp. 604 (C.D.Cal.1968), *aff'd sub nom, United States v. McGugin,* 423 F.2d 718 (9th Cir.), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970).

■ A § 6321 lien is not easily limited. First, such federal tax liens are not subject to any state laws that govern ordinary liens or to any state perfection requirements. *See United States v. Security Trust & Sav. Bank,* 340 U.S. 47, 51, 71 S.Ct. 111, 113–14, 95 L.Ed. 53 (1950); *Leggett v. United States,* 120 F.3d 592, 594 (5th Cir.1997). With respect to the operation of such liens, "there is no doubt that the paramount right to collect taxes of the federal government overrides a state statute providing for exemptions." *Leuschner v. First Western Bank and Trust Company,* 261 F.2d 705, 708 (9th Cir.1958). This means, for example, that barriers against creditors—which are the hallmark of a spendthrift trusts created under state law—cannot prevent a federal tax lien from attaching to the beneficiary's interests in that trust. *United States v. Rodg-*

*ers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *United States v. Bess,* 357 U.S. 51, 56–57, 78 S.Ct. 1054, 1057–58, 2 L.Ed.2d 1135 (1958) (once it has been determined that state law has created property interests sufficient for federal tax lien to attach, state law "is inoperative to prevent the attachment" of such liens); *see also, Dallas 1,* 152 F.2d at 585 ("If [IRS statutes] are in conflict with State law, constitutional or statutory, the latter must yield"). Second, a § 6321 lien is not limited by a discharge in bankruptcy: such a discharge only extinguishes the debtor's personal liability, 11 U.S.C. § 524(a)(1), and does not prevent the enforcement of valid tax liens against the debtor's bankruptcy estate. 11 U.S.C. § 522(c)(2)(B).

■ Further, § 6321 is intended to be broad in scope and to apply to every interest the taxpayer has in property. *See United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985); *Leggett,* 120 F.3d at 594. The statutory language used in § 6321 "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have. . . . 'Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes'" *National Bank of Commerce,* 105 S.Ct. at 2924, *citing, Glass City Bank,* 326 U.S. at 267, 66 S.Ct. at 110.

■ In sum, when a federal tax lien is created pursuant to § 6321, it attaches (and remains attached) to all of the debtor's prepetition property interests, notwithstanding state law spendthrift trust restrictions on alienation. Three questions remain for this Court. First, what kind of prepetition property interest did Orr have? Second, does a § 6321 lien attach to such property interests? And, third, what effect, if any, did Orr's filing for bankruptcy have on the lien's prepetition attachment?

### b. The Nature of Orr's Property Interest

Property is generally characterized as an aggregate of rights; "the right to dis-

pose of a thing in every legal way, to possesses it, to use it, and to exclude everyone else from interfering with it." *Black's Law Dictionary* 1095 (5th ed.1979). This so-called "bundle of rights and powers" can be divided among a number of persons, each of whom then possesses an interest that is less than absolute ownership. *In re Terwilliger's Catering Plus, Inc.,* 911 F.2d 1168, 1178 (6th Cir.1990), *cert denied,* 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991); *In re Kimura,* 969 F.2d 806, 810 (9th Cir.1992). Thus, there are various types of property interests.

 While the Supreme Court mandates a broad scope of attachment to property under § 6321, the section does not define what kind of property interests constitutes an attachable property interest for § 6321 purposes. Instead, in this context, it is left to state law to determine whether a taxpayer has a property interest to which a federal lien may attach. *See National Bank of Commerce,* 105 S.Ct. at 2925–26; *Bess,* 357 U.S. at 55, 78 S.Ct. at 1057; *Leggett,* 120 F.3d at 594. Therefore, the Court must look to Texas law for a characterization of Orr's property interest in the spendthrift trust.

 Texas courts have long upheld and enforced spendthrift trust provisions. *Burns v. Miller, Hiersche, Martens,* 948 S.W.2d 317, 320 (Tex.App.—Dallas 1997 writ denied); *Dierschke v. Central Nat'l Branch of First Nat'l Bank at Lubbock,* 876 S.W.2d 377, 380 (Tex.App.—Austin 1994, no writ). Under Texas law, a spendthrift provision generally prohibits a beneficiary from anticipating or assigning his interests in the trust. *Id.* Spendthrift trusts protect the beneficiary's interest in the trust corpus and income from claims of a beneficiary's creditors simply while the corpus and income remain in the trust and are held by the trustee. *Id.* The trust code essentially codified Texas common

law. TEX.TRUST CODE ANN. § 112.035 (Vernon 1995); *see Burns,* 948 S.W.2d at 321–2.[3]

 While Texas law prohibits creditors from reaching the beneficiary's income from a spendthrift trust, it does not deny that the beneficiary holds an "ownership interest" in the trust. *Burns,* 948 S.W.2d at 322. In *Burns,* the Court reasoned that, unless trust beneficiaries had an ownership interest in trust assets, spendthrift provisions preventing the alienation of such assets would be superfluous. *Burns,* 948 S.W.2d at 322. Thus, while the trustee holds bare legal title and the right to possession of spendthrift trust assets, it is "the beneficiary [who] is considered the real owner of the property, holding equitable or beneficial title." *Id.; Hallmark v. Port/Cooper–T. Smith Stevedoring Co.,* 907 S.W.2d 586, 589 (Tex. App.—Corpus Christi 1995, no writ); *Dierschke,* 876 S.W.2d at 381.

 In the present case, it is undisputed that paragraphs 5 and 26 of the trust in question create a spendthrift trust and that Orr is the sole beneficiary. Consequently, under Texas law, Orr had a vested equitable interest in the trust income when the lien attached and when he filed for bankruptcy.

### c. Federal Tax Liens Regularly Attach to Equitable Interests

The Court must now determine precisely in what manner a federal tax lien attaches to a beneficiary's equitable interest in a spendthrift trust. As noted above, Congress intended for liens to attach broadly under § 6321, *see United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985); *Leggett,* 120 F.3d at 594, and, accordingly, courts have regularly held that such liens attach to imperfect

---

**3.** Of course, as explained above, such state law barriers to creditors do not apply to the IRS.

property interests in general and to equitable property interests in particular. For example, federal tax liens attach to rights under a contract which are dependant upon future performances, *Seaboard Surety Co. v. United States,* 306 F.2d 855 (9th Cir.1962), to royalties which are contingent on a third party's performance, *United States v. Phillips,* 715 F.Supp. 81 (S.D.N.Y.1989), to equitable interests in the form of realty contracts, *Runkel v. United States,* 527 F.2d 914 (9th Cir.1975), and to a beneficiary's equitable interest in a land trust. *In re Cavanaugh,* 153 B.R. 224, 228 (Bankr.N.D.Ill.1993). As the *Cavanaugh* court explained: "...the beneficial interest in a land trust is clearly property of the beneficiary of the land trust, not the property of the land trustee. Thus, a federal tax lien against a beneficiary of a land trust does not attach to the underlying res in the land trust. However, a federal tax lien can attach to the beneficiary's beneficial interest in the land trust" (citations omitted). *Id.* at 228.

In the case relied on by the bankruptcy court (*Dallas 1, supra*), the Fifth Circuit addressed the issue of how a federal tax lien attaches to an equitable interest in a spendthrift trust, but that case is not determinative of the instant issue because this case involves a debtor/beneficiary who has filed for bankruptcy whereas *Dallas 1* merely involved a debtor/beneficiary who continued to receive spendthrift trust payments after the lien had attached. *Id.* In *Dallas National Bank,* the debtor owed federal taxes and so a lien was declared on her property, including her interest in the income from a spendthrift trust. *Dallas 1,* at 584. Her interest gave her the right to receive non-discretionary payments of the income generated by real property, and the government wanted to satisfy its debt from those payments as they were disbursed. *Id.* The Fifth Circuit held that, in accordance with 26 U.S.C. §§ 3670 and 3671, federal liens attach to property acquired after creation of the lien. *Id.* at 585. Accordingly, *Dallas 1* stands for the limited and well-established proposition that, when a federal tax lien attaches to a spendthrift trust, the IRS may collect its debt from all future disbursements of the trust income. *Id.* at 585.

Orr cites a phrase from *Dallas 1* which, when taken out of context, appears to support his position that the lien cannot attach to post-petition disbursements until the moment they are paid. The passage gives this impression because, for its immediate purposes, the Fifth Circuit could treat the question of property rights as a simple "either/or" proposition—either the debtor has full property interests or no property interests at all:

> [the debtor] has no title to the corpus of any property other than the profits after they have accrued and have been passed to her account and made available to her by the Trustee. In other words, after the "net revenues" ... accrue, or are set apart and become payable to her, such net revenues then belong to her and are then subject to the lien ... and are available as an appropriate res in a proceeding in rem by the Government to have a lien for delinquent taxes declared and enforced against such revenues. *Id.* at 585.

Although the Fifth Circuit did not need to decide the issue, this passage appears to say that federal tax liens attach to a beneficiary's interest in spendthrift trust income only as those income payments are made—in other words, these liens could only attach on a payment-by-payment basis, as if the beneficiary had no property interest in the income until the moment in which she exercised full proprietary powers over the income.

However, such an interpretation of *Dallas 1* conflicts with fundamental principles of property law which allow for a "bundle of rights" in any particular piece of property, *Terwilliger's,* 911 F.2d at 1178, and, further, the Fifth Circuit's subsequent rehearings of this case indicate that *Dallas 1* must be read in accordance with these fundamental principles. In *Dallas 2* and

*Dallas 3*, the court confirms its holding which is now an established tenet of tax law: that future disbursements from a spendthrift trust are subject to federal tax liens. *Dallas 2*, at 489; *Dallas 3* at 469. In *Dallas 2*, the debtor asserted that *Dallas 1* gave the government only the right to a single income disbursement, and not all subsequent ones. *Dallas 2* at 489. In explaining the nature of the government's right of recovery, the Court stated it previously had held that:

> the [debtor] *had an interest* in the trust property, but not an interest that could be sold; but that her share in the income after it accrued and was ready to be paid over to her was fully her property and could be subjected to the tax lien of the United States, and that the lien could be fastened on the future monthly income as it became payable to the taxpayer. *Id.* (emphasis added).

Thus, the phrasing of the modified opinion clarifies that the debtor had a property interest prior to the disbursements. Similarly, in *Dallas 3*, Judge Holmes states in his concurrence that the debtor "is the equitable owner for life of an undivided interest in Texas realty." *Dallas 3*, at 469.

The rehearings confirm that the beneficiary of a spendthrift trust has an equitable interest, and therefore it is inaccurate to read *Dallas 1* as saying that such a beneficiary has no interest until paid trust income. Also, these cases confirm that the government can collect from all future payments. What the *Dallas* cases are really discussing in the phrase cited by Orr is the ability of a lien to extend to future payments and the mechanics of collection of those payments, instead of discussing the way a lien attaches to that equitable interest prior to bankruptcy proceedings. Indeed, Judge Holmes states that *Dallas 2* holds that the debtor "had an interest in

the trust property but not an interest that could be sold." *Id.* (concurring, Holmes, J.), and that the previous decision thereby was limiting the manner in which the government could collect its debt: it could collect the payments as they were made, but could not sell the debtor's equitable interest or the corpus itself.[4] Meanwhile, the case does not reach the question of the effect of bankruptcy proceedings on the government's right to collect those payments.

 In sum, what can be gleaned from case law is that (1) underlying policy considerations call for broad attachment of federal tax liens to all sorts of property interests, including equitable interests, (2) that federal tax liens attach to an equitable interest in a spendthrift trust, and (3) that such attachment presumes that IRS will be able to collect all future disbursements. What cannot be answered from reading *Dallas* and the forgoing cases is whether, when a debtor files bankruptcy, the rule that liens attach only to prepetition property will somehow restrict the lien's attachment to only those disbursements made prepetition.

### d. The Effect of Filing Bankruptcy on Federal Tax Liens

 To determine whether Orr's filing for bankruptcy limits the attachment of the liens to only prepetition payments from the spendthrift trust, the Court must look to analogous situations since there is not a case directly on point. In Orr's case, he had an equitable interest and the federal liens attached to that interest. The question remains as to what (if anything) happened to that lien's attachment when Orr filed bankruptcy. As explained below, the effect of filing bankruptcy in such circumstances depends primarily on

---

4. Indeed, the quoted passage from *Dallas 2* could be read as holding that the debtor had an interest prior to disbursement and that the lien could not attach to such an interest. However, it is unreasonable to read the case in that way because the court simply was not deciding that issue: rather, it was deciding at what moment the IRS could collect the money from her—i.e., at what moment her property was "subjected" to the lien, and not at what moment the lien attached to her property interest.

the nature of the beneficiary's prepetition property interest: was the right to post-petition payments contingent, or was the right unconditional?

In *In re Connor*, 27 F.3d 365 (9th Cir. 1994), the IRS noticed a federal lien on the property of a retired supreme court justice of the Alaska Supreme Court ("Conner") pursuant to § 6321. *Id.* at 365. Two years later, Conner filed for bankruptcy and was discharged of personal liability for the tax debt. *Id.* at 366. The question in *Connor* was whether the lien attached to his prepetition beneficial. interest in his retirement benefits such that the IRS could satisfy its debt from his post-petition disbursements.

Like Orr, Conner sought a determination that his future payments were "after-acquired property" and thus clear of the lien. *Id.* The Ninth Circuit noted that this question "turns upon the nature of the rights created by Alaska's judicial retirement system." *Id.* Finding that the right was not contingent on any future occurrence or service, the Court found that "this unqualified right to receive future payments constituted "property" within the meaning of § 6321." *d.* The Court noted that it did not make any difference that Conner himself had not made any contributions to the benefits program. *Id* That is, the court recognized that the relevant issue was simply that Conner's right to the payments was unqualified.

Several bankruptcy courts have also found this inquiry to be the relevant one when determining precisely how federal tax liens attach to prepetition property interests which guarantee the beneficiary post-petition disbursements. For example, in *In re Wesche*, 193 B.R. 76 (Bankr. M.D.Fla.1996), the court was faced with the issue of whether federal tax liens attach to the debtor's post-petition civil service retirement payments. That court found it "firmly established in case law that a federal tax lien attaches to a then existing right to receive property in the

future." *See also, Tillery v. United States,* 204 B.R. 575 (Bankr.E.D.Okla.1996); *Wessel v. United States,* 161 B.R. 155 (Bankr. D.S.C.1993).

As with the retirement and civil service payments, Orr's right to the future payments was unqualified and guaranteed at the time the lien was created. Further, as in *Connor,* it does not matter that Orr made no contribution to the spendthrift trust to earn these future disbursements. Nor does it matter that Orr, like Conner, could not alienate his beneficial interest. What matters here is that Orr had an unconditional right to the income payments for the rest of his life.[5]

In sum, both the applicable statutes and the relevant case law indicate that the § 6321 lien must enable the IRS to collect the tax debt from all of Orr's trust income which is disbursed after April 30, 1996. First, under Texas law, the present right to future spendthrift trust income constitutes an equitable property interest. Second, in accordance with Congress' intent, § 6321 liens normally attach to a broad scope of property interests, including equitable interests. Third, when § 6321 liens attach to equitable property interests which unconditionally guarantee future income, they remain attached to that interest (and thus subject the future income to collection), even when the owner of the interest receives a personal discharge through bankruptcy proceedings. These three principles necessarily support the conclusion that the § 6321 lien attached to Orr's prepetition equitable interest in Trust B and remained attached to the interest after he received his personal discharge.

Finally, there are no extrinsic policy interests which could make the Court deviate from the logical conclusion of these principles. Orr suggests that policies implicit in both state law and the IRS code should temper the lien's attachment to his

---

**5.** Notably, Orr also has testamentary power over the trust corpus.

property. First, with respect to his state law arguments, since § 6321 liens are never subject to state law barriers to collection, there is no reason to expect that the state's purposes in allowing for spendthrift trusts should somehow alter the way a § 6321 lien attaches to an equitable interest. That is, it is irrelevant that state law aims to afford settlors control over the corpus or to ensure the that a beneficiary will not lose the guaranteed income.

Second, Orr's contentions based on the Bankruptcy code are equally unpersuasive. He essentially asserts that, since the Bankruptcy code creates the 180–day window following a debtor's filing of bankruptcy during which new income is included in the bankruptcy estate, the code intends to guarantee that all of debtor's income disbursed after that 180 days must be free of attachment—i.e., all subsequent income must be part of the debtor's "fresh start." Yet it is a matter of settled precedent that, pursuant to § 6321 liens, the IRS collects debts from income disbursed after that 180–day window. *Connor,* 27 F.3d 365; *Wesche,* 193 B.R. 76; *Tillery,* 204 B.R. 575; *Wessel,* 161 B.R. 155. Orr's contentions are simply attempts to circumvent the critical issues which must decided by looking to federal law on the nature of federal tax liens and to state law on the nature of Orr's property interest.

## V. CONCLUSION

For the forgoing reasons, the Court ORDERS that IRS' lien shall attach to all income distributions made to Orr from the spendthrift trust at issue (Trust B of the Unis Chapman Eichelberger Chapman Ranch Trust I), including those distributions made after April 30, 1996. Accordingly, the Court hereby ORDERS that the bankruptcy court's Order Granting Summary Judgment to Orr is OVERRULED.