# United States Court of Appeals
## For the First Circuit

———————

No. 00-9008

IN RE:  MITCHELL E. KANE and ALICE C. KANE,

Debtors.
——————

MITCHELL E. KANE and ALICE C. KANE,

Debtors, Appellees,

v.

TOWN OF HARPSWELL,

Creditor, Appellant.

———————

ON APPEAL FROM THE UNITED STATES BANKRUPTCY APPELLATE PANEL

FOR THE FIRST CIRCUIT

———————

Before

Boudin, <u>Chief Judge</u>,

Torruella, <u>Circuit Judge</u>,

and Stahl, <u>Senior Circuit Judge</u>.

———————

<u>F. Bruce Sleeper</u> with whom <u>Jensen Baird Gardner & Henry</u> was on brief for appellant.
<u>Ralph W. Brown</u> for appellees.

BOUDIN, <u>Chief Judge</u>.  This appeal arises from a prolonged effort by the Town of Harpswell, Maine, to foreclose a tax lien and expel the putative owners, Mitchell and Alice Kane, from a piece of real property subject to the lien.  In 1991, the Kanes bought this piece of already mortgaged property alongside Route 123 in Harpswell from one Francis Pagurko; in accordance with an installment sales contract, the price ($15,000) was to be paid in modest monthly installments.  Title was to be transferred after full payment.

Under the sales contract, the Kanes took immediate responsibility for paying real estate taxes and assessments.  Thereafter, on June 14, 1996, the town's tax collector filed a tax lien certificate, stating that taxes had gone unpaid.  Me. Rev. Stat. Ann. tit. 36, § 943 (West 1990).  To settle this and a related dispute with the town, the Kanes agreed to a payment schedule for the past taxes due.  <u>Town of Harpswell</u> v. <u>Pagurko</u>, No. CV-95-290 (Me. Super. Ct. July 29, 1996).

Apparently the Kanes made the payments through September 1997, but on September 18, 1997, they filed a chapter 7 bankruptcy petition, 11 U.S.C. § 301 (1994).  <u>In re</u> <u>Kane</u>, Case

No. 97-21505 (Bankr. D. Me. Jan. 9, 1998). This automatically prevented the town from enforcing vis-à-vis the Kanes or their estate the outstanding tax lien on the property, 11 U.S.C. § 362(a) (1994), which would otherwise have matured on December 14, 1997--assuming that the Kanes did in fact have a property interest. If they had only a contractual interest, then that was arguably extinguished because neither the trustee nor the Kanes purported to assume or reaffirm the installment sales contract for the property. 11 U.S.C. §§ 365(a), 521(2) (1994).

According to Mitchell Kane, he continued to tender monthly payments as promised in the earlier settlement but, after October 1997, the town stopped accepting them. On November 4, 1997, the trustee filed a report abandoning any claim of the estate to the property. 11 U.S.C. § 554 (1994). Then, on November 13, the town sent the 30-day notice of foreclosure required by state law, warning that the tax lien would be foreclosed on December 15. Me. Rev. Stat. Ann. tit. 36, § 943 (West 1990 & Supp. 2000).

In January 1998, the Kanes were discharged from bankruptcy and the bankruptcy case was closed. The discharge freed the Kanes from personal liability on various debts but not from valid tax liens on the property, 11 U.S.C. §§ 522(c)(2)(B), 524(a)(1) (1994); Wrenn v. Am. Cast Iron Pipe Co. (In re Wrenn),

-3-

40 F.3d 1162, 1164-66 (11th Cir. 1994) (per curiam); IRS v. Orr, 239 B.R. 130, 134 (S.D. Tex. 1998), or from unsecured claims for certain taxes, including certain property taxes, 11 U.S.C. §§ 507(a)(8)(B), 523(a)(1) (1994). In the wake of the discharge, the town warned the Kanes to resume payments or face eviction.

Mitchell Kane asserts that in late January 1998 he tendered all the delinquent payments but that the town refused them. Apparently nothing then occurred until April 5, 1999, when the town wrote the Kanes, saying that it now owned the property because the tax lien had been foreclosed--automatically after the notice provided in November 1997, Me. Rev. Stat. Ann. tit. 36, § 943--and that the Kanes had 30 days to vacate the premises, Me. Rev. Stat. Ann. tit. 14, §§ 6001-02 (Supp. 2000). When the Kanes refused to leave, the town brought an eviction action in Maine state court.

On June 2, the day scheduled for the eviction hearing, the Kanes filed a petition for chapter 13 bankruptcy, again triggering an automatic stay of actions against them or their estate, 11 U.S.C. § 362(a). Town of Harpswell v. Kane (In re Kane), Case No. 99-20899 (Bankr. D. Me. 1999). The town then filed a motion to lift the stay as to the eviction action which, after several hearings, the bankruptcy court granted in an order of August 13 ("the relief order"). See 11 U.S.C. § 362(d)(2)

-4-

(1994).  The court ruled that the Kanes had no equity in the property because <u>inter alia</u> they failed to assume the installment sales contract in their chapter 7 bankruptcy.

Thereafter the bankruptcy court dismissed an intervening request by the Kanes to determine the validity of the town's lien, saying that the Kanes were bound by the court's earlier ruling that they lacked any equity in the property.  In due course, the state district court in the pending eviction action determined that the town had a right to possess the property.  <u>Town of Harpswell</u> v. <u>Kane</u>, No. WES-SA-99-237 (Me. Dist. Ct. Dec. 8, 1999).  The state superior court affirmed, saying that given the prior decisions of the bankruptcy court, issue preclusion established the Kanes' lack of interest in the property.  <u>Town of Harpswell</u> v. <u>Kane</u>, No. AP-00-003 (Me. Super. Ct. Mar. 9, 2000).

The Kanes appealed from the relief order to the Bankruptcy Appellate Panel ("the BAP"), which stayed that order and, on May 10, 2000, reversed.  <u>Kane</u> v. <u>Town of Harpswell</u> (<u>In re Kane</u>), 248 B.R. 216, 225 (B.A.P. 1st Cir. 2000).  The BAP held <u>inter alia</u> that under state law, the installment sales contract effectively transferred the equity interest in the property to the Kanes at the outset, left almost nothing more to do on the seller's side, and was therefore a non-executory

-5-

contract that did not have to be assumed or rejected. Id. at 224. Consequently, said the panel, the town's purported notice of imminent foreclosure in November 1997 violated the automatic stay and was therefore ineffective to cut off the Kanes' equity. Id. at 224-25.

The town has now appealed to us from the BAP's decision. In its opening brief, the town mainly asserts that under preclusion doctrine the BAP was bound by earlier determinations by other courts that the Kanes lacked an equity interest in the property. These earlier determinations, says the town, include both the "unappealed" decision by the bankruptcy court dismissing the Kanes' intervening request to rule on the validity of the town tax lien and the Maine state court decisions in the eviction proceeding.

The preclusive effect of the bankruptcy court's dismissal ruling is determined by federal law, Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 978 (1st Cir. 1995), while the preclusive effect of the Maine state court rulings depends upon Maine law, 28 U.S.C. § 1738 (1994); Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000). But both the federal courts and the Maine courts tend to follow the general approach of the Restatement (Second) of Judgments (1982) ("Restatement"), Monarch Life Ins., 65 F.3d at 978; Mills v. Mills, 565 A.2d 323,

324 (Me. 1989); and neither the Restatement nor any precedent we have found addresses our peculiar problem. But peculiar does not necessarily mean difficult.

Under ordinary rules of issue preclusion, an issue "actually litigated and determined by a valid and final judgment," if "essential" to the judgment, binds the same parties in any subsequent action, "whether on the same or a different claim." Restatement § 27. The general rule applies-- in most jurisdictions--even where the first, or issue preclusive, judgment is still on appeal when the second action occurs. Ruyle v. Cont'l Oil Co., 44 F.3d 837, 846 (10th Cir. 1994), cert. denied, 516 U.S. 906 (1995); Bartlett v. Pullen, 586 A.2d 1263, 1265 (Me. 1991); see also Restatement § 13 cmt. f.[1]

Of course, one expects that, if appropriate appeals are perfected, an undoing of the first judgment will allow the second judgment to be undone as well--if it depended on the preclusive effect accorded to the first "merits" judgment. See Fed. R. Civ. P. 60(b)(5); Sender v. Nancy Elizabeth R. Heggland Family Trust (In re Hedged-Investments Assocs., Inc.), 48 F.3d

---

[1]Some jurisdictions, like California, take the minority view, holding that a judgment is not "final" for preclusion purposes while an appeal is still pending. See Cal. Civ. Proc. Code § 1049 (West 1980); Sullivan v. Delta Air Lines, Inc., 935 P.2d 781, 790 & n.7 (Cal. 1997).

470, 472-73 (10th Cir. 1995); S.C. Nat'l Bank v. Atl. States Bankcard Ass'n, Inc., 896 F.2d 1421, 1430-31 (4th Cir. 1990); Restatement § 16.  What is almost unique about our case is that the town is seeking to block an appeal of an original "merits" judgment by relying on the preclusive effect of later decisions which themselves relied on the original merits judgment now appealed.

Recall that the question whether the Kanes had acquired and retained an equity interest in the property was "actually litigated and determined" only once:  when the bankruptcy court ruled against the Kanes on the town's original motion for relief from the stay.  There were multiple later adoptions of this ruling--by the bankruptcy court in rejecting the Kanes' request to determine lien validity and by the state courts in the eviction case and its appeal.[2]  But these adoptions were based on issue preclusion and not litigation of the merits anew.  Cf. Lombard v. United States, 194 F.3d 305, 312 (1st Cir. 1999).

---

[2]The grounds on which the Maine district court ruled for the town are unclear.  However, the Maine superior court decision was unmistakably based on preclusion from the bankruptcy court's prior finding of no equity, and, under well-established doctrine, this appellate decision is the basis for whatever preclusive effect the two state court decisions have, Rutanen v. Baylis (In re Baylis), 217 F.3d 66, 71 (1st Cir. 2000); Restatement § 27 cmt. o.

-8-

The *Restatement* itself makes clear that "actual litigation and determination" involves something more than having an issue "resolved" as a result of some determinative legal doctrine that short-circuits the merits. As examples of issues not actually litigated, the *Restatement* points to situations where a matter is stipulated, admitted without controversy, or determined by default leading to the entry of judgment. *Restatement* § 27 cmt. e. In all of these situations, there has been no judicial decision on the merits, and issue preclusion does not apply, unless it can be shown (as by a stipulation) that the relevant parties intended otherwise. *Id.* *See generally* 18 Wright, Miller & Cooper, *Federal Practice and Procedure* §§ 4442-43 (1981 & Supp. 2001).

As for the original "actually litigated" ruling in this case, it may be regarded as "final" (the concept is a tricky one in bankruptcy matters, *Brandt* v. *Wand Partners*, 242 F.3d 6, 13 (1st Cir. 2001)), but the Kanes took a proper and timely appeal from that ruling to the BAP, which set the ruling aside. Certainly, the town can point to three other determinations to the same effect which have not been set aside; but it is obviously circular and unfair to treat those rulings as binding on the BAP (or in an appeal to us from its decision) since those other rulings are merely derived from a ruling that the BAP may

properly review on direct appeal and which the Kanes are entitled to have so reviewed.

The purpose of issue preclusion doctrine is to prevent a party from relitigating an issue where there has been full and fair litigation, _including_ an opportunity to appeal; indeed, where an appeal on an issue is unavailable for reasons beyond the control of the losing party, preclusive effect may be denied. _Nutter_ v. _Monongahela Power Co._, 4 F.3d 319, 321-22 (4th Cir. 1993); _Restatement_ § 28(1); _see also_ _Beale_ v. _Chisholm_, 626 A.2d 345, 347 (Me. 1993). Direct review of the erroneous original decision cannot be precluded because, in the meantime, the original court has repeated the error in the same case or other courts have adopted it by cross reference. _Cf._ _Livera_ v. _First Nat'l State Bank_, 879 F.2d 1186, 1190-91 (3d Cir.), _cert. denied_, 493 U.S. 937 (1989).

Admittedly, the town finds some helpful language in an aged Supreme Court opinion, _Deposit Bank of Frankfort_ v. _Board of Councilmen_, 191 U.S. 499 (1903), produced by a maximally divided Court at the turn of the last century. But despite its use of _res judicata_ terminology, _Deposit Bank_ was addressing the question whether state courts themselves could nullify the effect of an existing federal judgment by overturning a prior state court judgment on which that federal judgment depended.

-10-

Id. at 501-04, 512.  Deposit Bank was not a case in which a party claimed that preclusion from later judgments cut off timely appeal of the very judgment upon which those later judgments depended.  Id. at 501-04, 508.

Deposit Bank is therefore consistent with the well-established rule that "[a] judgment based on an earlier judgment is not nullified automatically" when the earlier judgment is reversed, Restatement § 16.  It does not deny the power of courts to reverse an earlier judgment on direct appeal; indeed, it treated as "settled law" the state courts' overturning of a prior determination despite intervening reliance on that determination by federal courts.  Id. at 508, 512.  Two other Supreme Court decisions cited by the town--Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398-99 (1981), and Reed v. Allen, 286 U.S. 191, 199-200 (1932)--are not to the contrary.

This brings us to the two other arguments made by the town's opening brief.  One is that the Kanes failed to show that the property was necessary to an effective reorganization.  Whether this is so or not--the BAP decision is all but silent on the point--does not matter on this appeal.  The bankruptcy court purported to grant relief from the automatic stay under section 362(d)(2); and that statute provides two conditions, each of which must be satisfied.  One condition is that the debtor lacks

-11-

an equity in the property; the other, that the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2).

The bankruptcy court found that the first condition was satisfied based on the earlier failure to assume the installment sales contract; the BAP has in turn reversed that ruling. If the BAP's reversal stands, it does not matter whether section 362(d)(2)'s second condition has or has not been satisfied because both need to be satisfied to make that section a basis for providing relief from the automatic stay. The town's third argument--that the BAP should not have granted a stay pending appeal--is even more clearly beside the point if the BAP is now affirmed.

So far we have rejected all of the arguments for reversing the BAP that appear in the town's opening brief. This takes us to the town's reply brief where, for the first time, the town argues that the BAP should be reversed on the merits, that is to say, not because the BAP was precluded from considering whether the Kanes had an equitable interest despite a failure to assume the sales contract, but because (according to the town) the BAP erred in deciding that they did have such an interest. Such an attack on the merits is unsurprising.

Indeed, the BAP's decision concedes that it turns on a close and difficult issue on which courts are divided.

The problem for the town is that its attack on the merits comes too late:  an entirely new ground of attack on the decision under review cannot be advanced for the first time in a reply brief.  Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 354 (1st Cir. 1992).  Nor are the town's arguments made timely by the fact that the Kanes, in answering the opening brief, sought (partly) to defend the BAP's decision on the merits; absent an attack on the merits by the town in its opening brief, the BAP's merits determination was no longer open to challenge by the town.  United States v. Benavente Gomez, 921 F.2d 378, 386 & n.6 (1st Cir. 1990).

"[E]xtraordinary circumstances" could still justify review of the merits, despite the untimeliness of the town's arguments.  Keeler v. Putnam Fiduciary Trust Co., 238 F.3d 5, 10 (1st Cir. 2001).  We have never spelled out just what constitutes such extraordinary circumstances, but some of the considerations are obvious:  whether there is some excuse for the failure to raise the issue in the opening brief; how far the opposing party would be prejudiced; and whether failing to

consider the argument would lead to a miscarriage of justice or undermine confidence in the judicial system.[3]

Here, the town could easily have addressed the merits in its opening brief.  Further, as the BAP's careful treatment shows, the merits issues are quite difficult (especially the question how the Kanes' interest should be classified).  Thus, there was ample need for full briefing and the Kanes' discussion of these issues in their answering brief would surely have been more developed and focused if the opening brief had addressed the merits.  Certainly nothing in the BAP's treatment of the merits even remotely approaches a miscarriage of justice.

This dispute has claimed a preposterous amount of time in five different courts to resolve tax claims of perhaps several thousand dollars on property purchased, not too long ago, for $15,000.  Last time the town and the Kanes worked out a settlement.  Admittedly, it did not hold, but part of the fault appears to have been with the failure of the original owner of the property to pay his promised share of the

---

[3]Obviously, there is an overlap between such inquiries and the tests for plain error set out in <u>United States</u> v. <u>Olano</u>, 507 U.S 725, 732 (1993), but the problems are not quite the same. Plain error assumes a failure to preserve the issue below and aims to protect the trial process; by contrast, our concern here is that although the issues in question were raised below, appellant failed to present them in appellant's opening brief, thereby leaving appellees without a full and fair opportunity to respond.

installments agreed to in 1996.  Before both sides spend more money on further litigation, an effort to reach a new settlement ought at least to be considered.

<u>Affirmed</u>.